## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| J. MICHAEL CONSIDINE, JR., | : | |
| | : | |
| Plaintiff | : | Civil Action No. 13-cv-7263-PD |
| | : | |
| vs. | : | **JURY TRIAL DEMANDED** |
| | : | |
| OFFICER JONATHAN J. JAGODINSKI, | : | |
| | : | |
| Defendant | : | |

## O R D E R

AND NOW, this        day of              , 2015, upon consideration of the Motion for

Summary Judgment of Officer Jonathan J. Jagodinski and plaintiff's response thereto, it is

hereby ORDERED AND DECREED that: Summary Judgment is granted and Plaintiff's

Complaint is dismissed with prejudice.

BY THE COURT:

_____

The Honorable Edward G. Smith,        J.

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| J. MICHAEL CONSIDINE, JR., | : | |
| | : | |
| Plaintiff | : | Civil Action No. 13-cv-7263-PD |
| | : | |
| vs. | : | JURY TRIAL DEMANDED |
| | : | |
| OFFICER JONATHAN J. JAGODINSKI, | : | |
| | : | |
| Defendant | : | |

### MOTION FOR SUMMARY JUDGMENT OF OFFICER JONATHAN J. JAGODINSKI TO PLAINTIFF'S AMENDED COMPLAINT

Officer Jonathan J. Jagodinski, defendant in the above matter, by and through his counsel, Robert P. DiDomenicis, Esquire, hereby move for entry of judgment pursuant to F.R.C.P. 56 and, in support thereof, state the following:

1.      The operative complaint in this matter is the Amended Complaint filed by plaintiff as Document #4 on February 12, 2014.

2.      Defendant filed an Answer to said Amended Complaint on April 4, 2014.

3.      Plaintiff's Complaint sets forth a claim under the First Amendment of the United States Constitution and a claim for malicious prosecution.

4.      For the reasons stated more fully herein, moving defendant is entitled to judgment as a matter of law as plaintiff does not have a viable first amendment claim and plaintiff does not have a viable malicious prosecution claim under Federal or State law.

5.      In addition, moving defendant is entitled to qualified immunity on any federal claims presented by plaintiff.

6.      Moving defendant hereby incorporates by reference the Memorandum of Law which is attached hereto and made a part hereof as though the same were set forth at length herein.

WHEREFORE, moving defendant, Jonathan J. Jagodinski, respectfully requests that the Court enter judgment in his favor and against the plaintiff, J. Michael Considine, Jr.

HOLSTEN & ASSOCIATES

BY:     RPD2724
        **ROBERT P. DiDOMENICIS, ESQUIRE**
        Holsten & Associates
        1 S. Olive Street
        Media, PA 19063
        (610) 627-2437
        Attorney for Defendant,
        Officer Jonathan J. Jagodinski

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **J. MICHAEL CONSIDINE, JR.,** | : | |
| | : | |
| **Plaintiff** | : | **Civil Action No. 13-cv-7263-PD** |
| | : | |
| **vs.** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **OFFICER JONATHAN J. JAGODINSKI,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANT, OFFICER JONATHAN J. JAGODINSKI TO PLAINTIFF'S AMENDED COMPLAINT

### I.   INTRODUCTION

Plaintiff is J. Michael Considine, Jr., Esquire. ¶3. Defendant is Jonathan J. Jagodinski, a police officer with Radnor Township. ¶4. At all times material to the Amended Complaint, plaintiff is and was an attorney admitted to practice in the Commonwealth of Pennsylvania. ¶5. In November, 2011 plaintiff was retained by the guardians and grandparents of Nicholas DeShais, a student who had been dismissed and/or forced to withdraw from Valley Forge Military Academy. The guardians and grandparents are Jan and Robert Neubauer. ¶6. Plaintiff asserts that the Neubauers retained him to find out why their grandson was dismissed or forced to withdraw from the academy and attempt to obtain a reimbursement of tuition from the academy. ¶6. On December 12, 2011, plaintiff went to Valley Forge Military Academy to interview students whose names were given to him by the Neubauers as witnesses. ¶7-8.

As the facts below will establish, Valley Forge Military Academy is a private academy surrounded by a fence and various gates allowing for entrance to the academy. Signage is posted at the front entrance to the academy along Radnor Street Road advising all visitors that they must

1

register with the Administration Building during school hours and with Security after school hours. As the facts set forth below will further establish, Mr. Considine entered on to the campus by driving his motor vehicle into a parking lot and then walking toward Martin Hall, a dormitory, where he encountered one of the eye witnesses. He then went with this minor student into his dorm room on the second floor of Martin Hall and was in the dorm room with the witness and another minor student who was also a witness. He then left the premises after talking to these children and while returning to his car encountered a staff member to whom he gave his business card.

Thereafter, the staff at Valley Forge Military Academy learned of the incident, contacted Radnor Township Police and Officer Jagodinski responded. Officer Jagodinski subsequently issued a citation to plaintiff pursuant to 18 Pa. C.S. §3503(b)(1)(iv). Mr. Considine was subsequently found guilty before a Magisterial District Judge and he appealed to the Court of Common Pleas. When no one appeared at the hearing on his summary appeal, the citation was dismissed and he was found not guilty.

Mr. Considine now brings this three count Amended Complaint asserting in Count I a violation of his First Amendment rights; in Count II a request for declaratory relief on the basis that his First Amendment rights have been violated; and in Count III, a claim for malicious prosecution. For the reasons which are set forth more fully herein, defendant Jonathan J. Jagodinski asserts that plaintiff's First Amendment rights were not violated and that probable cause existed for the citation that was issued. Furthermore, Officer Jagodinski is entitled to qualified immunity even if a first amendment violation did occur.

## II.   EXHIBIT SCHEDULE

Exhibit D1       Valley Forge Military Academy (VFMA) sign identified as Pinto-1 in the deposition of Sergeant Pinto;

Exhibit D2       VFMA sign identified as Pinto-5 in the deposition of Sergeant Pinto;

Exhibit D3       Email exchange dated December 13, 2011 between Shawn Phillips and others consisting of five pages, marked as Seitz-3 during the deposition of Colonel Seitz;

Exhibit D4       Email from Mr. Shawn Phillips dated December 12, 2011 at 8:55 p.m. to Mr. Babin and others previously identified as Exhibit Seitz-4;

Exhibit D5       Email from Diane Reiff, Administrative Assistant to the Commandant dated July 18, 2014 setting forth guidelines for visitation to the campus previously identified as Seitz-5;

Exhibit D6       Campus Security Regulations for VFMA identified during the deposition of Mr. Seitz as Seitz-6;

Exhibit D7       VFMA regulations including memorandum dated March 10, 2008 regarding campus security and visitor passes from the superintendent previously identified as Seitz-7.

Exhibit D8       Radnor Township Police Incident Report previously identified at Pinto-6;

Exhibit D9       Citation issued by Officer Jagodinski previously identified as Pinto-7;

Exhibit D10       Plaintiff's deposition;

Exhibit D11       Deposition of Officer Jagodinski;

Exhibit D12       Deposition of Sergeant Pinto;

Exhibit D13       Deposition of Shawn Phillips;

Exhibit D14       Deposition of Colonel Kenneth Seitz;

Exhibit D15       Deposition of Bryan Geiling;

Exhibit D16              Deposition of Jason Babin;

Exhibit D17              Print out of VFMA website regarding campus security;

Exhibit D18              Letter from Plaintiff dated December 15, 2011 to Colonel David R. Gray, President of VFMA;

Exhibit D19              Letter of December 28, 2011 from counsel for VFMA, George B. Randolph, Esquire to plaintiff.

## III.   FACTS

### A.   Testimony of J. Michael Considine, Jr.

J. Michael Considine, Jr., testified at his deposition on November 14, 2014, as follows:

1.      On December 12, 2011, plaintiff went to Valley Forge Military Academy (VFMA) and met with two students. (D10 p.6, l.2-8). Plaintiff had been retained by the guardians of a student, Nicholas DeShasis who was sixteen or seventeen years old at the time and had been involved in a hazing incident and been expelled from VFMA. (D10 p.6, l.19, p.7, l.5, l.23-24).

2.      Prior to December 12, 2011 and within the previous week, plaintiff had gone to the academy's grounds in an attempt to meet with two students. (D10 p.9, l.20, p.10, l.6, p.10, l.16-23, p.10, l.24, p.11, l.16). Mr. Considine did not check in with security on campus when he entered the campus. (D10 p.10, l.11-13).

3.      He had been told that these students lived in Martin Hall and he used the same entrance, E5, on both occasions and parked in a back parking lot and then walked down to Martin Hall. (D10 p.11, l.17,23). This was the first time that he had gone there and the second occasion was the date of the incident giving rise to the Complaint, December 12, 2011. (D10 p.12, l.9-11).

4

4.      He exited his vehicle on the date of the incident and walked toward Martin Hall and saw some cadets and he asked them if they knew Cadet Settinieri and, by coincidence, he was speaking to Cadet Settinieri.  (D10 p.13, l.5-19).  Plaintiff advised Cadet Settinieri that he was there as an attorney and represented the guardians of the Cadet who was expelled and asked him if he would be willing to speak to him, to which Cadet Settinieri agreed and he then suggested that Mr. Considine accompany him inside Martin Hall.  (D10 p.14, l.1-11).

5.      Plaintiff estimates the age of the cadet between fourteen and nineteen but did not think to ask his age.  (D10 p.14, l.13-23).

6.      Plaintiff went inside Martin Hall with Cadet Settinieri and walked up to the second floor where the cadet showed him the room where the incident took place and they began talking, it was a dorm room with two or three beds in it.  (D10 p.15, l.2-10).  Eventually Cadet Bernstein joined them in the room.  (D10 p.15, l.23, p.16, l.1).  This all occurred in the early evening between 6:00 and 7:00 p.m. (D10 p.16, l.23, p.17, l.12).

7.      Plaintiff was in the room with the boys for ten to twenty-five minutes.  (D10 p.20, l.2-4).  He never saw any adults while he was in Martin Hall.  (D10 p.20, l.12-18).

8.      He never asked Cadet Settinieri if he wanted to talk to his parents or guardian to get permission to talk to him.  (D10 p.28, l.19-23).  Similarly, he never asked Cadet Bernstein if he ever wanted to call his parents or guardian to get permission to talk with plaintiff.  (D10 p.20, l.24, p.21, l.3).

9.      At no time before going to VFMA's campus did plaintiff attempt to call the parents of the two cadets to get permission to interview them nor did he attempt to contact anyone who was in loco parentis or a guardian for the two cadets. (D10 p.21, l.7-21).

5

10.     Plaintiff never contacted VFMA to let any staff member know that he intended to go on to the campus to interview the children.  (D10 p.21, l.22, p.22, l.3).

11.     Plaintiff admits that at some point he was given the VFMA Handbook for the parents but he admits that he never looked at the website for VFMA before going there on December 12, 2011.  (D10 p.22, l.10-20).

12.     Plaintiff did write a letter to VFMA on December 15, 2011 in which he cited portions of the Parents Handbook.  (D10 p.22, l.21, p.24, l.12).

13.     Prior to entering the campus, plaintiff had discussed with the Guardian of Cadet DeShais, the grandmother, how he would speak to the cadets and she told him where they lived on campus and what time would be good to enter the campus.  (D10 p.24, l.13-22).  She advised plaintiff that a good time to go would be between 5:00 and 7:00 p.m., because they probably would be available. (D10 p.25, l.2-58).

14.     The letter that he sent to VFMA on December 15, 2011 was the first notice that he advised VFMA that he was representing former Cadet DeShais.  (D10 p.25, l.6-15).

15.     The first time plaintiff had gone to the campus he had walked over from his church which backs up to the parking lot next to the athletic field so he just walked on to campus and in doing so crossed over Radnor Street Road.  (D10 p.26, l.16, p.27, l.6). At that time he did not see the signs that were on Radnor Street Road at the front of the campus.  (D10 p.27, l.9-13) (referencing signs which are marked as Exhibits D1 and D2 and have also been referred to as Exhibits Considine-1 and Considine-2 and Pinto-1 and Pinto-5).

16.     Prior to plaintiff's deposition, counsel did, with permission of VFMA, enter the campus and take photos of signs and he did take photographs of the signs on Radnor Street Road

6

as identified above. (D10 p.27, l.14, p.28, l.2). Plaintiff asserts that he never saw the signs on Radnor Street Road. (D10 p.28, l.3-17).

17.     As plaintiff was leaving the grounds on December 12, 2011 and approaching his vehicle, he observed a man and he gave him his business card. (D10 p.29, l.12-18). He had a brief discussion with this man and he believes it had to do with whether he had permission to park his car in that parking lot. (D10 p.30, l.5-15). He does not recall seeing the signs restricting that parking lot to staff members when he entered it on December 12, 2011. (D10 p.31, l.2-6).

18.     The next day at some point he found a phone message on his answering machine at his office which was the same phone number that was on the business card that he gave the man the evening before. (D10 p.31, l.12-23). He did not save the voicemail which happened to be from Officer Jagodinski. (D10 p.31, l.24, p. 32, l.3). The voicemail indicated that it was from an officer at Radnor Township Police Department, mentioned his name, said that he was issuing plaintiff a citation for defiant trespass for being on the campus of VFMA and that he was never to return there. (D10 p.32, l.6-12). Plaintiff did receive a citation in the mail. (D10 p.33, l.7-12) (also identified herein as D9).

19.     Subsequent to receiving that citation, a hearing took place before Magisterial District Judge and after two continuances, the hearing took place on April 18, 2012. (D10 p.34, l.2-18). At the hearing on April 18th, at least one individual from VFMA appeared with Officer Jagodinski. (D10 p.35, l.1-15). Plaintiff was found guilty of defiant trespass. (D10 p.36, l.17-24). Plaintiff then appealed to the Court of Common Pleas and when no one appeared to prosecute the citation, plaintiff made a Motion to Dismiss which was granted. (D10 p.37, l.1-15).

.

20.     At the time plaintiff entered the campus of VFMA, he was aware that it was a private campus.  (D10 p.39, l.10-15).  Plaintiff did not believe that it was necessary to try to contact the parents or guardians of the minors before interviewing them.  (D10 p.40, l.2-12).

21.     Plaintiff asserts that Officer Jagodinski did not have probable cause to cite him because he never spoke to plaintiff to find out his version of events, never looked for signage stating "No Trespassing" on the VFMA campus or signage indicating permission was needed or registration required.  (D10 p.40, l.18, p.41, l.9).

22.     Plaintiff believes that because he is an attorney he is privileged to enter private property to speak to minor witnesses without their parents' or guardians' permission because if he had asked VFMA for permission, it would not have been granted he would not have been able to obtain his information.  (D10 p.42, l.1,21).  As far as plaintiff is concerned, it made no difference whether it was a public school or a private school.  (D10 p.43, l.6-8).

**B.     Testimony of Jonathan J. Jagodinski**

The deposition of Officer Jonathan J. Jagodinski is marked as D11.

23.     Defendant Officer Jagodinski has been employed by Radnor Township as a police officer for seven years.  (D11 p.4, l.10-14).

24.     Defendant was then shown a photograph he identified as a sign posted by VFMA providing Notice to all visitors and believes the sign was posted on December 12, 2011 because he was advised by a VFMA staff member that it was posted although he did not go specifically to the site at the entrance for see if it was.  (D11 p.9, l.24, p.10, l.13).  (This is the photograph that is marked D1 and was also marked as Pinto-1).  This photograph pertains to visitors registering with VFMA staff and Officer Jagodinski had seen it before the date of the incident. (D11 p.13, l.21, p. 14, l.9).

8

25.     Defendant did attempt to contact plaintiff at the number provided on his business card on the evening of the incident and believes he left his return number at the Radnor Township Police Department with his extension.  (D11 p.14, l.17).  In this message, Officer Jagodinski identified himself and where he worked, the reason he was calling and let plaintiff know that he would be receiving a citation for trespassing at VFMA and he believes he also advised plaintiff that he would be receiving a letter from VFMA advising him that he is no longer welcome on the campus and that should he return, he would be subject to arrest for trespassing.  (D11 p.16, l.3-15).  He advised plaintiff per the instructions of the staff at VFMA that he was not to return to campus.  (D11 p.16, l.16-19). The VFMA staff asked the defendant to make the phone call to plaintiff.  (D11 p.16, l.20, p.17, l.3).

26.     Officer Jagodinski believes he spoke with Mr. Babin and Mr. Phillips.  (D11 p.17, l.8-12) (also confirmed in the Incident Report prepared by Officer Jagodinski as D8).  Officer Jagodinski noted that VFMA has a roving security patrol throughout the campus twenty-four hours a day, seven days a week, and that multiple gates around the campus were locked at the time of the incident. (D11 p.18, l.2-8).

27.     Officer Jagodinski spoke to the boys to whom plaintiff spoke and also spoke to staff at VFMA who advised him that they were aware of why plaintiff was on the campus and the juveniles also explained to Officer Jagodinski that plaintiff was asking questions about the student who had been dismissed.  (D11 p.18, l.19, p.19, l.6).  That same evening Officer Jagodinski prepared his report and the citation.  (D11 p.20, l.21, p.21, l.7).

28.     Officer Jagodinski was advised that plaintiff was on campus and then left campus before anybody in authority position was aware of his presence. (D11 p.21, l.22-24).  Officer

9

Jagodinski was aware of the signage on the VFMA campus requiring individuals to check in with security to advise him of their presence on campus. (D11 p.22, l.7-12).

29.     Officer Jagodinski believes the signage establishes that one who does not register with security is not authorized to be on campus. (D11 p.24, l.3-6).

30.     Officer Jagodinski testified that he believes plaintiff, if taking a statement from a juvenile, should have the parental guardian or someone in the best interests of that juvenile over the age of eighteen present. (D11 p.25, l.13-18).

31.     Officer Jagodinski believes that the campus security has the right to grant or deny authorization for a visitor to enter campus because it is a private institution which has its own security force. (D11 p.27, l.7-16).

32.     Officer Jagodinski believes that the sign noted as D1 (also Pinto-1) has the same effect as stating "no trespassing". (D11 p.28, l.5-12). Accordingly, a visitor who does not register is not permitted to be on campus according to Officer Jagodinski. (D11 p.30, l.9-11, p.31, l.10-21).

33.     Officer Jagodinski was aware that all of the dormitories on campus are secured to exclude external visitors who are not registered members of the campus. (D11 p.34, l.13-17).

34.     Officer Jagodinski also related that his concern when he responded to the call that any time an adult individual enters a locked dormitory room to speak to a juvenile without the presence of an adult, that there is a safety risk (D11 p.37, l.4-7) and believes that it is common sense that an adult would not enter a bedroom with juveniles without another adult present to look out for the juveniles' best interests. (D11 p.40, l.7-10).

35.     Even if plaintiff entered the campus at a point where no such sign existed, he would have still cited plaintiff because the location of the signs at the front of the campus were

"likely to come to your attention in my opinion"; "because it is posted at one of the main entrances to the campus." (D11 p.41, l.2-22).

**C.**   **D1 and D2**

36.    The signs identified at D1 and D2 and also identified as Considine-1 and Considine-2 in plaintiff's deposition and Pinto-1 and Pinto-5 state the following:

VALLEY FORGE
MILITARY ACADEMY
AND COLLEGE

**NOTICE TO ALL VISITORS**
FROM 8 AM – 4PM,
MONDAY – FRIDAY
ALL VISITORS **MUST**
REGISTER AT THE
ADMISSIONS OFFICE IN
MEDENBACH HALL.
ALL OTHER TIMES,
VISITORS MUST
REGISTER WITH
CAMPUS SECURITY
AT LEE HALL.

Campus Security 610-959-1258

**D.**   **Testimony of Shawn Phillips**

The testimony of Shawn Phillips was taken from his deposition is marked as D13.

37.    Mr. Phillips was employed at VFMA as the Superintendent at the time of this incident.  (D13 p.5, l.15, p.6, l.3).  One of this employees advised him of the incident with plaintiff and then contacted the Commandant of Cadets and they called Radnor Township Police. (D13 p.6, l.22, p.7, l.21).

38.     Mr. Phillips had the authority to contact the police and take appropriate action. (D13 p.7, l.22, p.8, l.8).  He spoke to the Commandant, Rik Thornton who was aware that the card of the attorney had been left at the site.  (D13 p.10, l.14, p.11, l.11).

39.     He believes there was a sign restricting campus visitors on the campus although not one in front of Martin Hall.  (D13 p.14, l.12-22).  He noted he does have the authority to recommend that a citation or arrest occur.  (D13 p.15, l.4-13).  There are signs on campus that indicate visitors must report to security.  (D13 p.15, l.18, p.16, l.4).

40.     He noted that the decision to cite plaintiff was not based on him being on campus but because he was in the private quarters with minors without the knowledge of any adults. (D13 p.16, l.18, p.17, l.12).

41.     The fact that plaintiff was an attorney was irrelevant to Mr. Phillips as he still has the responsibility to notify the institution. (D13 p.18, l.17, p.19, l.18).  What he did know that there was a male on campus behind closed doors with one of his cadets without any knowledge of the administration of the school.  (D13 p.20, l.15, p.21, l.6).

42.     He noted that the signs around the campus indicate visitors must report to the officer-in-charge and it is also on the school's website and that the school is a private school and there are procedures to visit the school.  (D13 p.23, l.1-13).

43.     Mr. Phillips reviewed the incident report that was prepared by Officer Jagodinski and stated that the statements made by Officer Jagodinski were accurate.  (D13 p.31, l.7, p.32, l.16).  Mr. Phillips also identified the emails that he sent and received regarding this incident including emails that he sent to parents of the students.  (D13 p.33, l.5, p.34, l.6).  He noted that he wrote to the parents to make sure that everyone was informed as to what had happened and he also contacted the school's attorney.  (D13 p.35, l.18, p.36, l.19).

**E.**     **Testimony of Mr. Brian Geiling**

The testimony of Mr. Geiling is taken from his deposition which is marked D15.

44.     Mr. Geiling is the Director of Facilities at VFMA and has been employed there for fifteen years.  (D15 p.4, l.8-13).

45.     Mr. Geiling was shown Exhibit P-1 (D1).  (D15 p.8, l.2-4).  Mr. Geiling stated that there are two of these signs requiring registration located in the general parking lot and at the chapel gate.  (D15 p.9, l.13-19).  The general parking lot is located on the northwest quadrant of the campus adjacent to the Church of the Savior and on the west side of Radnor Street Road. (D15 p.9, l.17, p.10, l.4).

46.     When asked whether or not the sign indicates that permission is required to be on campus, Mr. Geiling indicates "it implies it by saying registration."  (D15 p.10, l.16-18).

47.     Mr. Geiling identified the particular sign identified as D1 herein noting that there are two of them located on Radnor Street Road.  (D15 p.17, l.12-18).  He also noted that the school has purchased private property signs in the past and identified a document which was a purchase order for signs reading "private property" in 2008.  (D15 p.17, l.19, p.18, l.4).  They also have private property signs on the athletic fields.  (D15 p.18, l.5-12).

**F.**     **Testimony of Colonel Seitz**

The following sections have been taken from the deposition of Colonel Kenneth Seitz.

48.     Colonel Seitz is  the Adjutant in the Commandant's Department and has been with VFMA for twenty three years.  (D14 p.4, l.15-23).

49.     In this capacity he supervises the Security Department and became aware of the incident when plaintiff entered campus to speak to cadets in their dorm room when he was contacted by a security officer that same night.  (D14 p.5, l.2-25).

50.     Prior to 2008 there were no restrictions about entering the campus, however, since 2008 VFMA instituted a sign-in procedure for visitors. (D14 p.15, l.7-19).

51.     When a visitor comes on campus they are asked to give their purpose for any meeting and asked for identification.  (D14 p.17, l.2-10).

52.     If an individual wanted to talk to a cadet VFMA would make certain that the parents or guardian of the cadet gave permission.  (D14 p.18, l.8-10).

53.     If the parents of the cadet did not approve then VFMA would not allow the person, including any attorney, to speak to the cadet. (D14 p.19, l.3-7).

54.     Colonel Seitz testified that each parent and guardian is issued a Parents Handbook that provides the policy regarding visitations and the need for permission and also noted that this policy is on the website for the school.  (D14 p.23, l.3-10).

55.     The website for the school has the various rules posted for anyone to look at and these rules were present before December 12, 2011.  (D14 p.28, l.15-22) and (D17).

56.     The photo identified as D1 (Pinto-1) is posted on campus near the Chapel walk. (D14 p.28, l.23, p.29, l.11).

57.     The school has between five hundred and six hundred children on campus and the children that plaintiff was talking to on December 12, 2011 were between the ages of twelve and fourteen with at least one of them in middle school.  (D14 p.30, l.18, p.31, l.11).

58.     The campus is surrounded by fencing and gates although some gates are left open. (D14 p.31, l.12, p.32,l.14).

59.     VFMA has security patrols on campus from 8:00 p.m. to 8:00 a.m. and during the day staff and faculty provide security.  (D14 p.33, l.20, p.34, l.8).

60.     Colonel Seitz identified several Exhibits marked Seitz-1 through Seitz-8, including Seitz-3 through Seitz-7, which are identified herein as Exhibits D3 through D7.  (D14 p.34, l.12, p.40, l.19).

61.     Colonel Seitz indicated that the photograph identified in Exhibit D1 (Pinto-1) was present before December 12, 2011.  (D14 p.41, l.3-10).

**G.     Testimony of Sergeant Joseph W. Pinto**

The testimony below is from the deposition of Sergeant Joseph W. Pinto.

62.     Sergeant Pinto has been a police officer in Radnor Township since July 11, 1995. (D12 p.4, l.14-22).

63.     He is aware of limited access to the campus and that access to the dorms is by access code or key and then a TAC officer will meet individuals in the lobby of the building. (D12, p.6, l.11-25).

64.     He knows there is a sign on the main entrance to the property on Radnor Street Road that requires individuals to report to the office or check in with security before you go on to campus.  (D12, p.9, l.16, p.10, l.3). This sign has been up as long as he has been working at Radnor.  (D12, p.11, l.8-14).

65.     Sergeant Pinto stated he does not know if it is illegal for an adult to speak to a cadet in a dorm room but noted that it is highly improper and personally he would not be caught in a dorm room with a juvenile asking him about a legal matter without the juvenile having his interest represented.  (D12, p.20, l.8, p.21, l.10).

66.     Sergeant Pinto stated that the signs clearly indicate that someone entering the campus requires permission and registration with security.  (D12, p.23, l.7-16, p.25, l.20-22).

67.     Officer Jagodinski brought the incident to Sergeant Pinto's attention and he reviewed the incident report to make sure the necessary information was contained therein. (D12, p.6, l.24, p.29, l.17).

68.     In his opinion, the campus has had limited access for nineteen plus years he has been working at Radnor and the entire campus is surrounded by a fence with a limited number of access points and at most times they are blocked by gates, especially during the nighttime when you can only access the campus through one point.  (D12, p.41, l.14-24, p.42, l.4-15).

69.     Sergeant Pinto testified that the signs make it clear that no trespassing is permitted and that common sense would let anyone known that they are not permitted to be on campus without registration and, further, that the school is a private institution and fenced in, thereby giving further notice to anyone.  (D12, p.54, l.6-24, p.56, l.19-21).

70.     Sergeant Pinto expressed his opinion that the signs are reasonably posted and this is sufficient to provide notice of restrictions especially considering that a fence surrounds the campus.  (D12, p.66, l.4, p.65, l.23).

**H.     Testimony of Jason P. Babin**

The facts below are taken from the deposition of Mr. Jason P. Babin.

71.     Mr. Babin was employed by VFMA from November, 2008 until March, 2012 and was the lead tactical officer for Martin Hall where he was the primary person responsible for the welfare of the students who resided in that hall. (D16, p.6, l.8-15).

72.     On December 12, 2011 he was contacted at home by another TAC officer that someone had entered the building without approval.   He reported to Martin Hall and was informed of it and began an investigation and also notified the commanding officer, Colonel Phillips. (D16, p.6, l.1-13).

16

73.     As part of the investigation he reviewed a video from the surveillance cameras inside Martin Hall and saw the individual enter the front door and then go upstairs to the second floor, enter a student's room and, after a short time, exit through the main entry again. (D16, p.7, l.20-24).

74.     His investigation revealed that the TAC officer on duty was not aware that this person had entered the building and he subsequently spoke to a security officer who advised him that someone was stopped while in the process of leaving the campus, identified himself as a lawyer and provided information. This person was asked to leave and did so.   (D16, p.8, l.14-22).

75.     He again reiterated that he watched the video and saw the person entering through the front entrance, go up the west stairwell then enter an open door entering a room at which point the door was closed, time went by, the person exited and then left through the main entrance. (D16, p.8, l.24, p.9, l.4).

76.     Mr. Babin then spoke to the students and they advised him that the person had asked a couple of questions about a prior incident and then left and Mr. Babin informed Colonel Phillips of his findings. He also informed the parents that a person that was not able to be identified at that time had spoken to their children.   (D16, p.9, l.5-16).

77.     Mr. Babin indicated that the parents of the students were advised and they were upset or concerned that this person spoke to their children without their permission. (D16, p.14, l.18, p.15, l.13).

78.     Mr. Babin also identified what has previously been marked as Seitz-4 (D4), which was an email dated December 12, 2011 at 8:54 p.m., which he sent advising others at VFMA about the incident noting that the person who entered Martin Hall did not seek nor receive

permission to be on campus or in the barracks and recommending that Radnor Police be notified as soon as possible to investigate and pursue possible charges.  (D16, p.17, l.9, p.18, l.21).

IV.    **STANDARD OF REVIEW**

A Motion for Summary Judgment shall be granted where all of the evidence demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  A genuine issue of material fact exists when "a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id.

If the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "do more than simply show there is some metaphysical doubt as to the material facts." Matshushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the District Court that there is an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

When considering a Motion for Summary Judgment, a court must view all inferences in a light most favorable to the non-moving party. See Anderson, 477 U.S. at 255.  The non-moving party, however, cannot "rely merely upon their assertions, conclusory allegations or suspicions" to support its claim. Firemen Ins. Co. v. DeFresne, 676 F.2d 965, 969 (3rd Cir. 1982).  To the contrary, a mere scintilla of evidence in support of the non-moving party's position will not suffice; there must be evidence on which a jury could reasonably find for the non-moving party.

18

<u>Anderson</u>, 477 U.S. at, at 252.  Therefore, it is plain that "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Celotex</u>, 477 U.S. at 322.

V.   **ARGUMENT**

It is somewhat beyond comprehension that an educated adult who happens to be a licensed attorney in the Commonwealth of Pennsylvania would find no repulsion in entering on to a private school campus during evening hours to locate a thirteen or fourteen year old child to discuss a legal case and then go with that child to his dorm room.  All of this being done without the permission of the child's parents, guardian or anyone in loco parentis.  It should not be lost on the Court that these actions were taken on December 12, 2011, right on the heels of the criminal prosecution of Jerry Sandusky which heightened awareness about school security throughout the country.

Plaintiff was well aware of the fact that had he attempted to obtain permission from the parents or guardians of the minor students that this may have likely been denied.  Accordingly, he knew that the only way to obtain information he wanted to possibly file a lawsuit against VFMA was to do so without seeking permission.  By plaintiff's own admission, he had previously entered the campus from the Radnor Street Road sign several days or a week earlier where the two signs identified as D1 and D2 are prominently posted.  The fact that he was aware that the school is a private school based on his discussions with his own clients and the fact that each student and their parents are provided with handbooks setting forth security requirements in itself would have put the plaintiff on notice.  Moreover, even the school's website sets forth security requirements including requiring that all visitors report to the Office of Admission to

obtain a visitor's pass.  The website clearly notes that visitors not in compliance will be asked to comply or depart the campus.

The fact that the campus is ringed with a high fence and gates would also put a reasonably prudent person on notice that it is private property.  Plaintiff will argue that there are no "no trespassing" signs posted at every entrance.  The fact is that the signs identified as D1 and D2 put everyone on notice that they must register during regular business  hours or with security and provide the phone number for campus security.

This is a private school and plaintiff entered the premises without permission to talk to two minors about a private matter involving another cadet who had been expelled or asked to leave.  Clearly, there is no First Amendment issue here regarding any matter of public concern and even if one existed, that right does not exist on the private property that is not open to the public.  Plaintiff will be hard pressed to argue that a dorm room of a minor where he discussed matters relating to his clients enjoys the cloak of First Amendment protection.

Plaintiff was charged with violating 18 Pa. C.S. §3503(b)(1)(iv).  The pertinent portion of this statute reads as follows:

> **(b)**    **Defiant  trespasser**
>
> (1)    A person commits an offense if knowing that he is not licensed or privileged to do so, he enters or remains in any place at to which notice against trespass is given by:
>
> > (i)    actual communication to the actor;
> >
> > (ii)    posting in a manner prescribed by law or reasonably likely to come to the attention of intruders;
> >
> > (iii)    fencing or other enclosure manifestly designed to exclude intruders;

20

(iv) notices posted in a manner prescribed by law or reasonably likely to come to the person's attention at each entrance of school grounds that visitors are prohibited without authorization from a designated school, center or program official; or

(v) an actual communication to the actor to leave school grounds as communicated by school, center or program official, employee or agent or a law enforcement officer.

**(c)** **Defenses – It is a defense to prosecution under this section that:**

(2) The premises were at the time open to members of the public and the actor complied with all lawful conditions imposed on access to or remaining in the premises; or

(3) The actor reasonably believed that the owner of the premises, or other person empowered to license access thereto, would have licensed him to enter or remain.

**(d)** **Definition** – As used in this section, the term "school grounds" means any building of or grounds of any elementary or secondary publically funded educational institution, any elementary or secondary private school licensed by the Department of Education and the elementary or secondary parochial school and the certified day care center or any licensed pre-school program.

Clearly, even if a member of the staff of VFMA did not actually communicate to plaintiff that he was not licensed or privileged to be on the property prior to December 12, 2011, the posting on Radnor Street Road was clearly and reasonably likely to come to the attention of the plaintiff. This is especially true since he indicate that the week before he had been on the campus and he entered from the Radnor Street Road side. Moreover, there is fencing surrounding the entire campus with gates at various openings. Moreover, the plaintiff cannot take advantage of the defenses set forth in the statute because at no time were the premises, and, in particular, the dormitory room in Martin Hall, open to members of the public and plaintiff

clearly did not comply with the lawful conditions imposed for access to the premises. Plaintiff cannot be heard to rely upon the consent of a thirteen or fourteen year old child who is clearly a student at the school in order to meet the necessary elements of this defense. Moreover, plaintiff was well aware that if he had contacted VFMA or the parents of these children, that he would not have been granted license to access the dormitory room of the children and speak to them about a legal case without the children having any representative present. Mr. Considine cannot argue, and in fact, his testimony clearly establishes, that he knew he would not have been granted permission to meet with these children which is why he entered the campus in the fashion that he did.

(A)   **PLAINTIFF CANNOT MEET THE NECESSARY ELEMENTS OF A MALICIOUS PROSECUTION CLAIM  UNDE FEDERAL OR STATE LAW**

**Federal Claim for Malicious Prosecution**

In order for plaintiff to state a claim under 42 U.S.C. §1983 for a claim of malicious prosecution, a plaintiff must show that: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Estate of Smith v. Marasco, 318 F.3d 497, 521 (3rd Cir. 2003). The mere fact that an individual has to attend court proceedings does not constitute a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. DiBella v. Borough of Beachwood, 407 F.3d 599, 603 (3rd Cir. 2005).

Here, plaintiff cannot establish the fifth element necessary to proceed on a malicious prosecution claim under federal law. The mere fact that plaintiff had to attend hearings before a Magisterial District Judge and in the Court of Common Pleas does not rise to the level of a seizure as a consequence of legal proceeding. Accordingly, plaintiff has no federal malicious prosecution claim.

### State Law Malicious Prosecution Claim

In order for plaintiff to succeed on a malicious prosecution under state law in Pennsylvania, he must establish that the defendant "(1) instituted proceedings against the plaintiff, (2) without probable cause, (3) with malice, and (4) that the proceedings were terminated in favor of the plaintiff." Corrigan v. Cent. Tax Bureau of Pa., Inc., 828 A.2d 502, 505 (Pa. Cmwlth. 2003).

### Probable Cause Defined

Probable cause exists if "at the moment the arrest was made ... the facts and circumstances within their knowledge and of which they had reasonably, trustworthy information, were sufficient to warrant a prudent man in believing" that the suspect had committed the crime. Hunter v. Bryant, 502 U.S. 224, 228 citing Beck v. Ohio, 379 U.S. 89, 91 (1964). "A court must look at the totality of the circumstances and use a common sense approach to the issue of probable cause." Sharrar v. Felsing, 128 F.3d 810, 818 (3rd Cir. 1997). Although probable cause generally is an issue for a trier of fact, "a district court may conclude that probable cause exists as a matter of law if the evidence, viewed in the light most favorable to the Plaintiff, cannot support a contrary finding. Merkle v. Upper Dublin School District, 211 F.3rd 782, 788-89 (3rd Cir. 2000). The probable cause determination should be left for the jury

only where there is sufficient evidence whereby a reasonable jury could find that an officer did not have probable cause. Sharrar at 818.

Under state law, it has been held that the question of lack of probable cause for instituting a criminal prosecution that gives rise to a civil action is not a question for a jury but exclusively for the Court. Turano v. Hunt, 631 A.2d 822, 825 (Pa. Cmwlth. 1993), citing Leonard v. Cole, 578 A.2d 53 (Pa. Cmwlth. 1990), appeal denied, 585 A.2d 470 (Pa. 1991).   The question of probable cause may be submitted to a jury when the facts material to the issue are in controversy. Id. 825.

As the Court in Turano, indicates, the criterion for probable cause is well below the standard of "proof beyond a reasonable doubt" and, rather "probable cause is a reasonable ground of suspicion supported by circumstances sufficient to warrant that an ordinary prudent person in the same situation could believe a party is guilty of the offense charge." Id. 825 citing LaFrankie v. Miklich, 618 A.2d 1145 (Pa. Cmwlth. 1992).

The Courts have also held  that evidence of probable cause can also be gleaned when a Magisterial District Judge holds over a defendant following a preliminary hearing and that this hold over "will constitute very weighty evidence and the plaintiff will bear a hefty burden in trying to overcome it." Tarlecki v. Mercy Fitzgerald Hospital, 2002 W.L. 1565568 (E.D. Pa.), citing Cosmas v. Bloomingdale Bros., Inc., 660 A.2d 83, 87 (1995).  Here, the fact that plaintiff was found guilty before a Magisterial District judge provides further weight to establish probable cause, although not conclusive.

In Commonwealth v. Downing, 511 A.2d 792 (Pa. 1986), the Supreme Court affirmed finding of guilt for defiant trespass where he attempted to enter a law library that was not available for his use at that time.  He attempted to enter the law library of Temple Law School.

24

The Court noted that the evidence clearly established that non-students such as the defendant in that case, or non-university affiliates "can gain access to the law library only if they ask for and obtain a library pass from the law school, which is revocable at the laws school's pleasure." Concluding that the law library is not open to members of the public within the definition of 18 Pa. C.S. §3503(c)(2) because the law library is not a place where the public generally is invited. Id. 795-96.  Just as here, VFMA is not open to members of the public unless they are invited on to the premises and all of the evidence presented establishes that not only was plaintiff not invited on to the premises, but he chose the time and place to go on to the premises to do so as secretly as possible and to avoid asking permission because he knew it would not be granted.

When viewing the testimony of the plaintiff in the light most favorable to the plaintiff, it is clear that plaintiff cannot establish that probable cause did not exist for the issuance of the citation.  Plaintiff's deposition testimony establishes that he entered on to the campus without providing any advance notice to VFMA or the parents of the students because he knew he would not be able to meet with the students and get the information he desired.  As previously noted, not only is the VFMA campus a private institution, but it is surrounded by a fence and on the front of the institution, prominently posted on Radnor Street Road are two signs requiring all visitors to register or sign in with security.  Clearly, this meets the mandates of the statute that it is "reasonably likely" to come to the person's attention nor can plaintiff take advantage of the specific statutory defenses since the campus and, most importantly, the dormitory room of Cadet Settinieri is not open to the public and plaintiff could not reasonably believe that VFMA or the parents of the cadets would allow him to enter into the dormitory hall and then into the dormitory room of Cadet Settinieri and accompanied by Cadet Bernstein.

These are the facts with which Officer Jagodinski was confronted when he arrived on campus and learned that an adult male was in the room of two cadets without any adult supervision or permission of the guardians or parents of the children. Any reasonable officer confronting the same situation would conclude that probable cause existed for a citation to be issued to the plaintiff. This is especially true where it was known that there are signs posted on the front of the campus requiring visitors to register and it was clear to plaintiff that VFMA was a private institution.

Putting this all into the context of that evening, as well as the timeframe in which it happened, Officer Jagodinski had a clear concern for the safety of these minors and it was clear that VFMA was interested in following through to prosecute plaintiff.

It should also be remembered that probable cause exists for any crime which could have been charged. Barno v. City of Perth Amboy, 42 F.3d 809, 819 (3rd Cir. 1999) where there court also noted that the test for probable cause is an objective one based on "the facts available to the officers at the moment of arrest." Id. 819 citing Beck v. Ohio, 379 U.S. 89, 96 (1964). Arguably, plaintiff could have been charged with a violation of 18 Pa. C.S. §2910, luring a child into a motor vehicle or structure. This offense is defined as follows:

> (a) **Offense** – Unless the circumstances reasonably indicate that the child is in need of assistance, a person who lures or attempts to lure a child into a motor vehicle or structure without the consent, express or implied, of the child's parent or guardian commits an offense.

Accordingly, the evidence clearly establishes that probable cause existed for the issuance of the citation for defiant trespass against plaintiff under the circumstances where there is no question that plaintiff knew or should have known that his presence in a dormitory room of two

minors without a guardian or parent present or without the parents' permission was unlawful. Accordingly, plaintiff cannot establish a state law claim for malicious prosecution.

In Commonwealth v. Gordon, 477 A.2d 1342 (Pa. Super. 1984), the Court held that an individual who is caught in school at night could not establish that he was privileged to enter the school and the Court noted that lack of privilege may be proven from the surrounding circumstances, including inferred from the fact that he did not have permission to be in a locked school after 6:00 p.m. on a school holiday. Id. 54. The fact that he knew he was not privileged or licensed to enter the premises could be inferred from the evidence at the time and manner of his entry. Id. 55 citing Commonwealth v. Goldsborough, 426 A.2d 126 (1981). As the Third Circuit noted in Wright v. City of Philadelphia, 409 F.3d 595 (3rd Cir. 2005), the probable cause standard does not require police officers to correctly resolve conflicting evidence or that their determinations of credibility, were, in retrospect, inaccurate. Moreover, the Third Circuit has made it clear that a police officer is not required to "undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already exists." Noting that an arresting officer was reasonable in believing a credible report from a school principal who had witnessed an alleged theft. Merkle v. Upper Dublin School District, 211 F.3d 782, 790 n.8 (3rd Cir. 2000) The Third Circuit in Feldman v. Community College of Allegheny, 85 F. Appx. 821 (C.A. 3, Pa.) held that police officers had probable cause to believe that a student was trespassing on college property where they received information from the college security guard advising that he had previously told the plaintiff to leave the premises. It held that this information was sufficient for the officers to rely upon. Id. 825. Accordingly, as the Court noted, there was no need for the officers to investigate the status of this student any further. Accordingly, it is

abundantly clear that Officer Jagodinski had probable cause to cite the plaintiff for defiant trespass on December 12, 2011.

## B.   PLAINTIFF HAS NOT ESTABLISHED A FIRST AMENDMENT VIOLATION

The Courts have held that an arrest resulting in a First Amendment Free Speech violation must fail if the police had probable cause to make the arrest. Armes v. City of Philadelphia, 706 F. Supp. 1156, 1163 (E.D. Pa. 1989), citing Losch v. Borough of Parkesburg, 736 F.2d 903 (3rd Cir. 1984); and Corbett v. Goode, 1990 W.L. 181499 (E.D. Pa.). As defendant has previously set forth facts and circumstances which establish that probable cause existed for the citation to be issued to plaintiff, plaintiff's First Amendment claim must also fail.

Moreover, plaintiff's First Amendment claim must fail because plaintiff did not have a First Amendment right to speak to the two minor witnesses in their dormitory room on the VFMA campus. VFMA is clearly a private school and its property is private property. The United States Supreme Court has concluded that the right to exclude others is a fundamental element of private property ownership and the First Amendment does not create an absolute right to trespass. Kaiser Aetna v. U.S., 444 U.S. 164, 179-180 (1979). Hudgens v. National Labor Relations Board, 424 U.S. 507 (1976). In Lloyd Corp. v. Tanner, 407 U.S. 551, 570 (1972), the Supreme Court ruled that private property is subject to the constraints of the First Amendment only where it has been "dedicated to public use." Clearly, VFMA is not a property dedicated to public use, but, more importantly, the dormitory room in Martin Hall where plaintiff lodged himself with the two children is clearly not an area on the private property of VFMA that is dedicated to public use.

In Lloyd, supra, the plaintiff brought a First Amendment Claim against the owner of a large shopping center for the right to distribute handbills at the shopping center. The shopping center was approximately 50 acres and open to members of the public. The owner of the property employed security guards who were commissioned by the municipality who possessed police authority.

Among the 50 acres in this large shopping center was an auditorium where political candidates had been allowed to speak. The owner of the property allowed these candidates to speak in the auditorium in the hope that it would bring people to the shopping center who would shop before leaving. Id. at *555, fn.3.

The plaintiff in Lloyd challenged the property owner's rule forbidding the distribution of handbills. The Supreme Court held that the plaintiff had no First Amendment right on private property. Id. at *570. The Court concluded that private property does not lose its private character "merely because the public is generally invited to use it for designated purposes." Id. at *569. As noted, the Supreme Court held that private property is subject to the constraints of the First Amendment only where the private property has been dedicated to public use. Id. at *570. The Court noted that even this is a "attenuated doctrine." Id. at *569.

Plaintiff has no First Amendment rights on the property of VFMA. Certainly, he has no First Amendment rights in a dormitory room with two minors on the premises of VFMA without providing notice to VFMA of his attendance at this meeting or seeking their approval or the approval of the minor's parents. There is no evidence that the VFMA campus is dedicated to public use. There is clearly no evidence that this dormitory room is dedicated to public use. The only thing that is clear on this case is that the plaintiff surreptitiously entered the campus in an attempt to obtain information because he believed that VFMA and the parents of these children

29

would never grant authority to allow him to speak to them.  The mere fact that members of the public may enter on to the campus through an open gate even if they generally did so, does not strip this property of its private character.  Lloyd at *569.

To the extent that the plaintiff asserts that he was cited by Officer Jagodinski because of the content of his speech, there is no evidence in this record to establish same.  The evidence in this record establishes that Officer Jagodinski's only concern was the welfare of the minors.  In order to establish a retaliation claim under the First Amendment, plaintiff would have to establish that: (1) conduct or speech protected by the First Amendment; (2) retaliatory actions sufficient to deter a person of ordinary firmness from exercising his First Amendment rights; and (3) a causal link between the Constitutionally protected conduct or speech and the retaliatory action.  Albert v. Weaver, 2007 W.L. 2313830 (M.D. Pa.) citing Thomas v. Independence Township, 463 F.3d 285, 296 (2006).  Moreover, as in the case with plaintiff in the Albert case, here, plaintiff must establish an additional requirement by alleging and proving that the pursuit of the underlying citation was unsupported by probable cause.  Albert Id. *5 citing Hartman v. Moore, 547 U.S. 250, 126 S.Ct. 1695, 1699, 1707 (2006).  As the Court noted in footnote 8, the Supreme Court in Hartman made the absence of probable cause an element of the Constitutional tort.

Here, plaintiff can clearly not establish that his conduct or speech inside the dormitory room is protected the First Amendment.  He certainly has no evidence of any retaliatory action taken by Officer Jagodinski in response to the content of any speech in the dorm room, nor has he proven any causal link between any protected conduct or speech and the issuance of the citation.

As the Supreme Court noted in Kaiser Aetna, supra, the right to exclude others is a fundamental element of private property ownership and the First Amendment does not create an absolute right to trespass. Id. 179-180. As the Court in Armes noted, in citing Lloyd Corp., supra, a property does not "lose its private character merely because the public is generally invited to use it for designated purposes". Id. Accordingly, plaintiff does not have any viable First Amendment claim. As an attorney, plaintiff has no special privileges to enter private property without permission of the owner and conduct his business thereon, regardless of the purpose of his visit. Plaintiff used subterfuge to meet the minor students and then retreat to their dormitory room to obtain information and, frankly, this is both disturbing and well below the level of professionalism one would expect of a licensed attorney.

### ⸰ C.    OFFICER JAGODINSKI WOULD BE ENTITLED TO QUALIFIED IMMUNITY EVEN IF PLAINTIFF'S FIRST AMENDMENT RIGHTS WERE VIOLATED

The United States Supreme Court has held that qualified immunity serves to "insulate government officials from liability for assumable damages when the discretionary conduct of that official did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The standard for applying qualified immunity is an objective one. The Supreme Court has instructed that the inquiry must focus on the "objective reasonableness of an official's conduct as measured by reference to clearly establish law". (Id).

The Court has further explained, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say official action is protected by qualified immunity unless the very action in question has been

31

declared unlawful, but it is to say that the unlawfulness must be apparent." <u>Anderson v. Creighton</u>, 483 U.S. 635 (1982).

Qualified immunity is an immunity from suit, and not a mere defense to liability. As a general rule, the issue of whether an official is entitled to qualified immunity should be determined prior to trial, as the purpose of qualified immunity is to protect officials and public employees from undergoing the burdens of litigation. <u>Mitchell v. Forsythe</u>, 472 U.S. 511 (1985).

In <u>Hunter v. Bryant</u>, 112 S.C. 534 (1991), the Court recognized that "the qualified immunity standard gives ample room for mistakes of judgment in protecting all but the plainly incompetent or those who knowingly violate the law. This accommodation for reasonable error exists because officials should not err always on the side of caution because they fear being sued." <u>Id</u>. at 137. The question of whether an official is entitled to qualified immunity is not limited solely to determining whether the official violated clearly established law. The United States Supreme Court has repeatedly instructed that an official can be entitled to qualified immunity if that official violated clearly established law, but the violation was " objectively reasonable" based upon the information in his possession a the time of the conduct of which Plaintiff complains."

In <u>Saucier v. Katz</u>, 533 U.S. 194 (2001), the Supreme Court explained why a Court should conduct an additional level of analysis in determining whether an officer is entitled to qualified immunity as follows:

> The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. It is sometimes difficult for an officer to determine who the relevant legal doctrine, will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts, but have a mistaken understanding as to whether a particular (action) is legal in those circumstances. If the officer's mistake as to what the law requires

32

is reasonable, however, the officer's entitled to the qualified
immunity defense.

Saucier at 205.   Moreover, the Supreme Court has held that the two-step procedure

outlined in Saucier is no longer mandatory.   The Court has stated:

> When reconsidering the procedure required in Saucier, we conclude
> that, while the sequence set forth there is often appropriate, it should
> no longer be regarded as mandatory.   The Judges of the District Courts
> and the Courts of Appeal should be permitted to exercise their sound
> discretion in deciding which of the two prongs of the qualified
> circumstances in the particular case at hand.

Pearson v. Callahan, 555 U.S. 223 (2009).

As the Supreme Court advises, "the relevant, dispositive inquiry in determining whether a

right is clearly established, is whether it be clear to a reasonable officer that his conduct was

unlawful in the situation he confronted." Saucier at 202.   Moreover, the protection of qualified

immunity applies regardless of whether the government official's error is a mistake of law, a

mistake of fact, or a mistake based on mixed questions of law and fact. Groh v. Ramirez, 540

U.S. 551, 556 (2004).   Here, plaintiff does not have a right to enter into the dorm room of a

minor without permission of that minor's parents or the minor's custodians nor does he have any

First Amendment right to enter into a private room on a private school campus to advance the

personal representation of a client under these circumstances.   Clearly, such a right, even if it

existed, is not clearly established nor would it be under the circumstances of this case, especially

considering the timeframe in which this happened where schools across this country are

confronted with potentially dangerous situations from which they need to protect their students.

Although we ascribe no further motive to plaintiff's actions other than the mere need to further

his own interests by pursuing this case for a client, his mere presence in this dorm room without

adult supervision by a guardian or parent would clearly place any reasonable police officer on

notice of a safety risk.  The fact that it was made clear to Officer Jagodinski that plaintiff had no approval to be in the dormitory room, or, for that matter, approval to be on campus, further solidifies Officer Jagodinski's right to qualified immunity even if a First Amendment violation did occur.

## VI.    <u>CONCLUSION</u>

For the reasons stated herein, plaintiff has failed to establish a First Amendment violation or a malicious prosecution claim against Officer Jagodinski and it is respectfully requested that Plaintiff's Amended Complaint be dismissed with prejudice.


**HOLSTEN & ASSOCIATES**

**BY:**    <u>**RPD2724**</u>
**ROBERT P. DiDOMENICIS, ESQUIRE**
Holsten & Associates
1 S. Olive Street
Media, PA 19063
(610) 627-2437
Attorney for Defendant,
Officer Jonathan J. Jagodinski

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| J. MICHAEL CONSIDINE, JR., | : | |
| | : | |
| Plaintiff | : | Civil Action No. 13-cv-7263-PD |
| | : | |
| vs. | : | **JURY TRIAL DEMANDED** |
| | : | |
| OFFICER JONATHAN J. JAGODINSKI, | : | |
| | : | |
| Defendant | : | |

## CERTIFICATE OF SERVICE

I, Robert P. DiDomenicis, Esquire, counsel for Defendant Officer Jonathan J. Jagodinski, state that a true and correct copy of the within **MOTION FOR SUMMARY JUDGMENT** was served upon the following individuals **via electronic filing**, this 15th day of January, 2015.

**Andrew J. Erba, Esquire**
Williams, Cuker & Berezofsky
1515 Market Street
Suite 1300
Philadelphia, PA   19102

**Christopher Markos, Esquire**
Williams, Cuker & Berezofsky
1515 Market Street
Suite 1300
Philadelphia, PA   19102

**Gerard J. Williams, Esquire**
Williams, Cuker & Berezofsky
1515 Market Street
Suite 1300
Philadelphia, PA   19102

**J. Michael Considine, Jr.**
1760 Market Street
Suite 1100
Philadelphia, PA 19103

**George B. Randolph, Esquire**
Riley, Riper Hollin & Colagreco
717 Constitution Drive
Suite 201
P.O. Box 1265
Exton, PA  19341

Respectfully submitted,
**HOLSTEN & ASSOCIATES**

**RPD2724**
**ROBERT P. DiDOMENICIS, ESQUIRE**
**Attorney ID No. 30482**
**One Olive Street**
**Media, PA  19063**
**(610) 627-2437**
**Attorney for Defendant**
**Jonathan J. Jagodinski**