IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

J. Michael Considine, Jr.,           :      Civil Action
  Plaintiff

     v.                        :       No. 13-cv-7263-PD

Jonathan J. Jagodinski,
  Defendant

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

A.  Statement of Material Facts
I.      First Amendment

1.  Plaintiff was hired as an attorney by Jan and Bob Neubauer to investigate a hazing incident involving their grandson, a cadet at Valley Forge Military Academy(VMFA), which refused to tell them what happened. He wrote a letter to VFMA. Exhibit D-18. Exhibit D-10, pages 6-10.

2.  The day after he spoke to cadets on December 12, 2011, he heard a phone message from Defendant at his office stating that he was an officer with the Radnor Township Police Department, that he was sending a citation for defiant trespass and that Plaintiff he was never to return to VFMA. Defendant did not leave his number or ask him to call. Id, 31-32.

3.  If Plaintiff did not get the information the way he did it would not be able to do so since a deposition requires the filing of a lawsuit and VFMA and the parents may not have provided permission. Id., 42.

4.A different standard was applied to him than anyone who came onto campus. He was the only one issued a citation for defiant trespass who did not refuse to leave. Id., 47.

5. Radnor Police Officer Joseph Pinto received reports of people being on campus without registering. He took no action he recalls as a result. He

1

knows of no time in which a person was cited for trespassing for being on campus without registering. Exhibit D-12, pages 10-12.

6. VFMA has sent people letters stating or told them verbally they may not be on campus. He knows no one who received such a letter for being there once. Id., 17-18. If someone was doing something inappropriate, they were told to leave and not to return. Talking to a cadet in a dorm would prompt a letter. To talk to them there is not illegal but highly improper. Id, 19-20.

7.An attorney has the right to investigate and speak to juveniles within limits where they live if invited in. The conduct that was illegal was entering premises when "you should have known you were not allowed to be in without checking in with security." The sign does not say permission is needed to speak with a cadet but says you need to register. Registration is the same as permission. Id, 21-25.

8.The sign does require registration before speaking to someone. There is a sign in the vicinity of where he entered —exactly where "I do not know." He is not aware of a sign in the parking lot. "I cannot see where the sign is in [Exhibit P-4] the picture. It has no such sign." Id., 26-29.

9.P-1 was there 12/12/11 on the fence along Eagle Road. He does not know if was at E-4 or on Martin Hall then. Id., 30-32.   He cannot say if the P-1 sign was at or near the entrance then, but there was one on Radnor Street Road and Eagle Road. "I have not gone there from that date to present to see if they are there. I never said that sign was at E-4. I believe

2

one was at Eagle Road but I am not sure. I do not know if the P-1 sign was at every entrance 12/12/11." Id., 33-35.

10. Whether VFMA would have provided permission to speak to cadets depends on "what you would speak to them about."   Defendant told him Plaintiff was hired by a cadet's family. Id., 36-38.

11. He approved the incident report but did no investigation, which is in the discretion of the officer who writes it. Defendant spoke to the cadets. Id, 39-40. He does not know if he investigated whether Plaintiff was asked to leave and refused, or looked at entrances for signs such as P-1. One can drive onto campus without going through security. Id, 41-43.

12. Anyone can come onto campus without talking to security. No signs ban trespassing. Id, 46. VFMA has banned Plaintiff from the campus for life, including church services. Id., 49-50.

13. The citation states Plaintiff knew he shouldn't be on campus, even though there were no signs at entrances E-2, E-3 or E-4, parking lot or Martin Hall. He should have known due to common sense. Id, 54.

14. Attorneys have a right to interview witnesses. Normally if a person received a letter or was told not to go back, there would not be a citation. Notice has to be given to the offender to increase the grading of the violation. The posting in an area likely to come to the attention of intruders that trespass was not permitted was P-1, and the fact that VFMA is private, fenced in, requires tuition to attend and Plaintiff is an attorney.

3

Investigation is a huge part of what attorneys do. Id, 55-58.

15.Notice was posted at an entrance but perhaps not the one he entered. He does not know if it was posted at every entrance. You must reasonably understand you may not enter. Id, 63-65.

16. VFMA has sent a letter to people telling them they need to get permission to enter the campus in the future. id., 67-68.

17.Jonathan Jagodinski has cited people for defiant trespass before. In some of incidents there were no trespassing signs. He does not recall if in any of them there were signs requiring registration of visitors. In some of the cases the individuals were asked to leave. Exhibit D-11, pages 5-6. He has been on the VFMA campus many times for people trespassing. Id, 8.

18. VFMA told him they knew Plaintiff was an attorney interviewing witnesses about a cadet who was dismissed. Plaintiff left a phone number on his business card. Id., 20.

19. To take a statement from a minor "you want to have a parent or guardian present" but the law does not require this. Plaintiff was an attorney working for clients at the time. His card stated this. Id., 25-26.

20. If he called Plaintiff and found out there were no signs at the entrance where he entered, at the parking lot or at Martin Hall he still would have issued the citation. Notice was likely to come to his attention because it is posted at one of the main entrances at Radnor Street Road. No sign states the premises are not open to the public. Id., 41-42.

4

21. If someone is just passing through, the registration is not required because they are not a visitor. Attorneys have a First Amendment right to obtain information from witnesses. Id, 43, 46.

22. Kenneth Seitz, adjutant in the commander's department at VFMA who worked for 23 years as supervisor of the security department, is aware of no other incident in which a person's being on campus without obtaining permission to be there or registering prompted a call to police. Other people are on campus without registering. D-14, pages 12-13.

23. Maria Zullo, (May 16, 2014), Joseph Creegan, (October 4, 2013), and Jamie Whitsal, (November 11, 2011) were sent letters stating they could not return to campus. He does not know if they were given citations for defiant trespass. He asked Whitsal to leave. The only person he is aware of who was given a citation for defiant trespass was Mr. Lloyd,   who in 2014 was asked to leave and refused, was handcuffed and removed. He was not cited for his failure to register. He cannot explain why Zullo, Creegan, Whitsal and Justin Flood were given warnings not to return to campus but Plaintiff was given no warning but a citation for defiant trespass for one visit.   Interviewing the cadet was a legitimate function of an attorney but against VFMA rules. Id, 18-22, 26, 42. He encountered other individuals on campus without registering. He asked them to leave and if they left promptly nothing else was done. None were cited for defiant trespass. Id,

24. He is aware of no other time where an adult went to a cadet's room

without permission of a parent. Id., 33.

24. On April 13, 2009 Peter Robinson, Art Houston, Mark Grave, Michael Kinslow and Alister Crosby were sent a letter stating they are not permitted to return to VFMA. He is not aware if any of them received a citation for defiant trespass. Id, 40-41.

25. Bryan Geiling, VFMA's Director of Facilities for 15 years, does not know of anyone ever cited for defiant trespass for being on campus. He knows Plaintiff was an attorney. It is the first time he knew of adults speaking to cadets in a dorm room. Exhibit D-15, pages 15, 18-19.

26. Shawn A. Phillips, superintendant at VFMA from August 2010 to September 2012 whose duties included campus security, became aware of the incident and instructed the commandant to call the Radnor Police. Plaintiff's card was presented to him. Exhibit D-13, pages, 3-7,11.

27. He asked the police to arrest the person. id., 14-15.

28. He does not recall citations ever being issued before for someone being on campus. They were issued for persons who were warned not to come and came on campus anyway. It was issued to Plaintiff not for his being on campus but for being in private barracks with minors without parents' knowledge. He was aware the cadets invited the person to speak to them as an attorney, id., 16-18, to interview cadets. He had the responsibility to notify VFMA that he would do that. The grandparents should have notified the school. Id, 19-20. An attorney has an absolute right to interview

6

minors. No signs ban speaking to minor cadets. Id., 22. Plaintiff did not

threaten to return to campus. Coming on campus is not the issue. It is

conducting business without the knowledge of VFMA. Id., 25-27.

29. If it were one person talking to another outside the citation would not

have been issued. Id, 27-28.

30. The reason they did not call Plaintiff, instruct him he could not come

back without permission and they would issue a citation if he came back

was because the situation was developing and they did not have the

hindsight of 20/20 to know what all the intentions were and what had

happened. Id., 28. They did not call Plaintiff because they already made

the decision to arrest him. No other person who was ever issued a citation

for being on campus. None other spoke to cadets in their barracks after

hours. Id., 29, 30. Defendant advised him that a message would be left

that Plaintiff was no longer allowed at VFMA. (not saying VFMA banned

him) Id., 32. His e-mail states an attorney was speaking to cadets. Id., 34.

31. Jason P. Babin. Lead Tactical Coordinator from November 2008 to

March 2012 for Martin Mall, saw a video from the incident identifying a

lawyer who spoke to cadets. Exhibit D-16, pages 6-10. There is no evidence

he refused to leave. Id, 11. No sign said he could not speak to cadets but

this is in the handbook but he does not know where. There were no signs

banning entry into Martin Hall. Id., 12. Other individuals came onto the

campus to speak to cadets. They were not given citations for doing so. Id.,

7

13. On 12/12/11, no signs on campus banned speaking to minors, Id., 15.

Or from coming onto campus, and there were no signs on Martin Hall. Id.,

16. The 8:54 p.m. email states attorney interacting with cadets. Id., 17-18.

## II.     Malicious Prosecution

31. Plaintiff drove in entrance E-5 December 12, 2011 between 6 and 7

p.m., parked in the back parking lot, walked to the area in front of Martin

Hall, told Settinieri he represented guardians of a cadet involving an

incident and asked if he would speak to him. Settinieri said yes and asked

him to come into Martin Hall where they went to a second floor dorm room,

spoke with cadet Bernstein and Settinieri for 10-25 minutes and left. He

interviewed minors before and never asked for permission from parents.

Exhibit D-10, pages 12-21. There was no indication permission to do so

was needed. He did not look at the website before he went there. The

parents handbook nowhere stated he needed permission to do what he

did. Jan Neubauer never told him he needed permission. On December 28,

2011 counsel for VFMA sent a letter to him. Id, 22-26. The first time he

went to VFMA, the week of the incident, he walked from his church but

saw no signs. There was no sign requiring registration at the entrance

where he entered. He never saw such signs before or on 12/12/11. When

he returned to his car he gave an employee his business card. Id, 27-31.

32.Hearings on March 21 and April 4, 2012 were continued because

Defendant did not appear. Id, 34. In the appeal to common pleas, Plaintiff

8

waited around most of the day. The motion to dismiss was granted June 26, 2012 when Defendant failed to appear. Id. 35-38. Exhibit P-16. Plaintiff lost time he could have been working, appearing in court 4 times, 15-25 hours not including travel. Exhibit D-10, pages 43-46.

33. There were no "no trespassing" signs at any entrance, parking lot or at Martin Hall. He interviews witnesses on private property regularly, including minors. Defendant never left his number, asked him to call, looked at entrances to locate signs regarding trespassing, permission to enter or registration, went to Martin Hall to see if such signs were there, and did no investigation to Plaintiff knew permission was required or he was not privileged to enter. Id, 39-41.

34. Pinto knows of no signs restricting access to Martin Hall. Exhibit D-12, page 7. No signs state "no trespassing," ban entry or require permission before one can enter or speak to anyone on campus, including a cadet in a dorm room. Id., 9-10.   D-1 is posted on the sidewalk across from the Entrance at Radnor Street Road. Id., 11.

35. Exhibit D-1 states "Notice to All Visitors From 8 a.m. to 4 p.m. Monday through Friday all visitors must register at the admissions office…all other times visitors must register with Campus Security at Lee Hall." Exhibit D-2 is that sign by Radnor Street Road. Exhibit D-3 is a December 12, 2011 e-mail indicating an attorney met with cadets. It states inaccurately that Plaintiff went through Martin Hall's doors and then met Settinieri

9

Settinieri invited him in before he was inside Martin Hall. Exhibit D-10, pages 12-21. Exhibit D-4 confirms that VFMA obtained the Plaintiff's attorney business card and that trespassing charges would be pursued.

36. Jagodinski did not check the entrances to the campus to see if there were signs. VFMA staff told him the sign at D-1 was posted 12/12/11. He did not say where or at which entrance or that they were at each entrance. He did not go to the entrances between the time of the incident and when he wrote the citation. He does not know if there were signs at the entrance shown in P-2 or at the parking lot or the entrance to Martin Hall. He did no investigation to see if signs were posted. Exhibit D-11, pages 10-12.

37. He is not sure signs were there 12/12/11. He made no effort to see if they were posted at pedestrian entrances. He called Plaintiff but never spoke to him. He left a message and number for him to call. "Verbatim I cannot remember what I said I the message", except identifying himself, where he works, that he would receive a citation and a letter from VFMA stating he was not welcome or allowed to return to the campus. Id., 13-16.

38. There was no security checkpoint to access campus 12/12/11. The gate Plaintiff gained access by was not locked. He went to campus 12/12/11. Id, 17-18.

39. There is no reason he did not call Plaintiff another time to find out what happened. Id., 20. Plaintiff did not refuse to leave or say he would return. Signs stating his duty to register is the same as being required to obtain

10

authorization, although the sign does not state this. If someone does not register they are not authorized to be on campus. The signs nowhere state the consequences of failure to register. Id, 21-24.

40. Security may grant or deny authorization to be on campus. Nowhere on the signs does it state this. He has not spoken with security to see if they have authority to deny access. D-1 has the same effect as a sign "No Trespassing." A visitor who does not register is not permitted on campus though the sign does not state this   Id., 27-30.

41. The citation states that notice was posted on the grounds of required authorization. He does not know if there were signs other than D-1. He did not look to see if there were signs because "I wrote down what VFMA said where the signs are." He made no effort to see if there were signs where Plaintiff entered because "there was no way I could have known where that was." He attempted to phone him and was unable to get a response. A reasonable officer would not have spoken to Plaintiff before issuing the citation or looked for signs. Id., 31-34.

42. He does not know if Plaintiff saw signs, which parking lot Plaintiff parked at or if a reasonable officer would have gone to it to look for the signs. There are 2 parking lots. He cannot be sure if in the phone call all he said was he was issuing a citation, he was not allowed to return to VFMA and he left his name with no phone number or message to call. Id., 35-36.

43. There were no risks he would return to campus. He is subject to arrest

11

if he returns based on "my voice mail." He does not know if Plaintiff had actual knowledge he was not permitted to be on the campus, what signs he saw or entrance he used. He could have spoken to him before issuing the citation and asked. He wasn't able to contact him. He knew Plaintiff was in Martin Hall. He saw no signs on the entrance. Plaintiff should have known access was not permitted by common sense. Id., 37-40.

44. Seitz heard from Mr. Felecetti he encountered an individual in the parking lot and gave him a business card indicating he was an attorney. Exhibit D-14, pages 4-7. Seitz knew he sent a letter to VFMA about a former cadet. On that date there were not signs at each vehicular and pedestrian entrance regarding trespassing, requirements to enter and of registration, or at the parking lot or Martin Hall. VFMA does not have a policy banning members of the public from speaking to cadets. Id., 8-12.

45.No one at a gate monitors each person or vehicle that enters campus to approve entry. Anyone can walk onto campus at any time with no restrictions on entry. At registration, anyone could state their purpose was "visitor" and they would be let in. If the purpose was "investigation" security would require corroboration. If an attorney would come onto campus to speak to a cadet, it would make sure they had the permission of the parent or guardian.   VFMA would not permit him to speak to Cadets without the parents' approval. Id, 15-18. Plaintiff should have known he could not do so because despite the lack of signs because of the parents'

12

handbook and website. He is not aware Plaintiff had actual knowledge. He assumes the parent of guardian would have provided him with this information on registration or contacts VFMA in advance. Id., 22-23.

46. There have been no "no trespassing" signs on campus for the last 23 years. The signs require registration, not permission, to be on campus. He does not know if on 12/12/11 there were no signs prohibiting visitors who do not have authorization. Id., 25. P-1 sign is posted on campus near the chapel walk. Id., 29. Exhibit P-1. Gates E-4, E-5 and E-6 are left open. E-5 leads to the back of campus. Id., 32. P-1 nowhere states one must obtain permission to be on campus and does not ban trespassing. Id., 42.

47. Geiling stated there were no "no trespassing" signs at any vehicular or pedestrian entrance on 12/12/11 or since. The sign at D-1 was not at every entrance then but only at the general parking lot on the northwest quadrant of the property adjacent to Church of the Saviour. On that date there were none at the E-5 gate. D-1 implies permission was needed but does not state that specifically. No one who attempted to register was banned entry. His duties included security. Exhibit D-15, pages 4-13.

48. D-1 does not state visitors are prohibited without authorization or that if you do not register you cannot be on the property. After 12/12/11 the signs were changed and new ones are now in the barracks, athletic fields. D-1 signs are located on Radnor Street Road. Id., 16-17. See Exhibit P-5.

49. Phillips stated there were no signs at Martin hall banning entry by

13

unauthorized persons. Exhibit D-13, page 22.

50.   There were no signs that stated one could not go into buildings and speak to cadets. Id, 27-28.

51. VFMA added new signs after the incident. There was no actual harm to the cadets or VFMA from the incident. Id., 37.

52. The VFMA handbook states barracks are off limits to visitors unless the visitor has an appointment to meet with a TAC Officer in his office. It does not mention dorm rooms. Exhibit D-5. Visitors not in compliance will be asked to comply or leave the campus. Non-compliance or chronic non-compliance with visitor's regulations may result in a campus ban. Crimes involving violence, major property loss, or felonies are immediately reported to the township police. At no time are outside guests permitted inside the barracks unless an appointment has been made with the Tactical Officer. © 2012 Valley Forge Military Academy and College. Exhibit D-6. A visitor pass is required Mon-Fri 8:30 a.m.-4 p.m. Exhibit D-7. Defendant was on the premises 9:17-9:56 p.m. 12/12/11 "Lawyer identified by his business card approached cadets and asked them questions about the incidents." D-8. The citation states Plaintiff' knowing he was not privileged to do so, entered the premises at Martin Hall. Notices posted at schools entrances advise visitors of required authorization. Fine is $288.94. D-9. A website from 2012 states a registration requirement. © 2012 Valley Forge Military Academy and College. D-17. Plaintiff wrote a

14

letter as legal counsel to VFMA December 15, 2011. It does not mention receiving a citation. D-18. The December 28, 2011 letter from VFMA counsel contains false statements such as that plaintiff compelled statements from the cadets and that VFMA elected not to prosecute Plaintiff. No affidavits support this. VFMA urged the citation to be sent which is prosecution. D-19. None of the entrances (E-1, E-3, E-4, E-5, and R-7) had no trespassing signs or those stating that visitors are prohibited without authorization. Exhibits P-2, 3, 4, 6, 7, 8, 9, 10, 11, 12, 13, 14. Nor did the parking lot. Exhibit P-15, whose entrance sign calls it Kuncl Hall Parking Lot. P-10.

   B. Law

   1. Defiant Trespass Statute
A person commits an offense if, knowing he was not licensed or privileged to do so, he enters…any place as to which notice against trespass is given by (i) actual communication to the actor, (ii) posting in a manner prescribed by law or reasonably likely to come to the attention of intruders, (iii)fencing or other disclosure manifestly designed to exclude intruders (iv)notice posted in a manner prescribed by law or reasonably likely to come to the person's attention at each entrance to school grounds that visitors are prohibited without authorization from a designated school, center or program official. 18 Pa. C.S.A. §3503(b)(1). It is a defense to a prosecution…that (2) the premises were at the time open to members of the public and the actor complied with all lawful conditions imposed on

15

access or on remaining on the premises (3) the actor reasonably believed that the owner of the premises or others empowered to license access thereto would have licensed him to enter or remain. Trespass requires knowledge one is not licensed or privileged to enter a building. 18 Pa. C.S.A. §3503(a)(1) and (2).

2.  Defiant Trespass Case Law

The prosecution must prove the land was posted with no trespassing signs, Commonwealth v. McSherry, 32 Pa. D. & C. 215 (1938), and knowledge of no license or privilege to be on the property. Wright v. City of Philadelphia, 409 F. 2nd 595 (3rd Cir. 2005). The intent under (b) (1) must be proven beyond a reasonable doubt, Commonwealth v. Namack, 444 Pa. Super. 9, 663 A. 2nd 191 (1995), such as where a college security guard instructed the student to leave and he refused to do so. Com. v. Downing, 511 A. 2nd 792 (Pa. 1986); Feldman v. Community College of Allegheny, 85 Fed. Appx. 821 (3rd Cir. 2004); Armes v. City of Philadelphia, 706 F. Supp. 1156, 1163 (E.D.Pa. 1984)(No trespassing signs posted and no legitimate business purpose to be at abortion clinic). Those delivering groceries are entitled to do so to the land of goods ordered and are entitled to damages from losses resulting in interference in the business due to a trespass prosecution. Burford v. Rainey, 42 C.C. 137, 62 Pittsburgh 219 (1913).

The issue is not whether there is a right to speak at the location where

16

the speech occurred such as a privately owned shopping center. <u>Lloyd Corp. v. Tanner</u>, 407 U.S. 551, 557-570 (1972).Union organizers who seek to solicit for union membership may intrude on an employer's private property if no alternative means exist for communicating with the employees. <u>N.L.R.B v. Babcock and Wilcox Co.</u>, 351 U.S. 105 (1956).

   3.  Malicious Prosecution

To prove malicious prosecution in PA, Plaintiff must prove 1) Defendants initiated a criminal proceeding, 2) ending in Plaintiff's favor, 3) without probable cause, 4) acting maliciously or for a purpose other than bringing Plaintiff to justice.   <u>Donahue v. Gavin</u>, 280 F. 3d 371 (3rd Cir. 2002). A court may conclude probable cause did not exist as a matter of law if the evidence, viewed most favorably to Plaintiff, would reasonably not support a contrary factual finding. <u>Estate of Smith v. </u>Morasco, 318 F. 3rd 497, 514 (3rd Cir. 2003). Malice can be inferred from lack of probable cause. <u>Russoli v. Salisbury Tp.</u>, 126 F. Supp. 2d 821 (E.D. Pa. 2000).   No immunity exists for malicious prosecution for police officers: it is an intentional tort.   id. The record must show objective facts available to the officer to support a belief by him that Plaintiff was engaged in criminal activity. <u>Beck v. Ohio</u>, 379 U.S. 8896 (1964). The question of probable cause is for the court.   <u>Briston v. Clevenger</u>, 80 F. Supp. 2d 421 (M.D. Pa. 2000). Reasonable grounds of suspicion must not be based on an inadequate or unreasonable investigation. <u>Wainaukis v. Howard Johnson</u>

Co., 339 Pa. Super. 256, 488 A. 2nd 1117 (1985).

4. First Amendment Retaliation

The First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecution, for speaking out. Hartman v. Moore, 547 U.S. 250 (2006). The First Amendment includes the right to receive, obtain, Stanley v. Gore, 394 U.S. 557, 564 (1969), listen to, Pa. Family Institute, Inc. v. Black, 489 F. 3rd 156 (3rd Cir. 2007) or gather information, Press-Enterprise Company v. Superior Court, 478 U.S. 1, 8 (1986). It applies to the source and recipient of communication. Virginia State Board of Pharmacy v. Va. Citizens Consumer Council, Inc., 425 U.S. 748 (1976). Speech that is neither obscene as to youths nor subject to some other legislative proscription cannot be suppressed solely to protect the youth from ideas or images that the legislative body thinks is unsuitable for them, Brown v. Entertainment Merchants Association, 131 S. Ct. 2729 (2011). The government interest in protecting children from harmful materials does not justify unnecessarily broad suppression of speech addressed to adults. Reno v. A.C.L.U,, 521 U.S. 844 (1997).

Retaliation claims must be proved according to traditional principals of but-for causation. The motivating factor standard is rejected. That is, Plaintiff must prove the adverse action would not have occurred had Plaintiff not engaged in protected activity. Plaintiff need not show such

activity is the only cause of the adverse action. Plaintiff may establish liability under the but-for standard even if other factors contributed to Defendant's taking an adverse action as long as the protected characteristic was the factor that made a difference. University of Texas Southwest Medical Center   v. Nassar, 133 S. Ct. 2517, 2533 (2013). To establish a First Amendment retaliation claim, the plaintiff must prove (1) constitutionally protected conduct; (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) a causal link between the constitutionally protected conduct and the retaliatory action. Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006). "["[T]he key question in determining whether a cognizable First Amendment claim has been stated is whether 'the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.'" Id. (quoting McKee v. Hart, 436 F.3d 165, 170 (3d Cir.2006));   Crawford–El v. Britton, 523 U.S. 574, 589 n.10 (1998). The alleged conduct must have more than a de minims impact on plaintiff's First Amendment rights. McKee, 436 F.3d at 170. Retaliation against an attorney in the form of surveillance for filing of suit and doing his job representing a client violates the First Amendment. Anderson v. Davila, 125 F. 3rd 148 (3rd Cir. 1997).

A)  Discriminatory Animus

The failure of the district to consider administrative action, rather

than instituting criminal prosecution, for what the police consider to be an internal school district matter, in light of the lack of a school policy on the disposal of school supplies, is a factor. Plaintiff made a statement to the press after consultation with the district's solicitor, in response to a meeting in which 200 residents protested her suspension and prosecution. Defendant gave a public statement but no information on Plaintiff's version of the incident. Whether Plaintiff was prosecuted in retaliation for activities requesting the removal of Huckleberry Finn from the school library for its racial language or out of concern that vital supplies were stolen is a question of fact for the jury   and not one of law for the court. Defendant told Plaintiff if the school has a policy it is a mistake to speak out against it publically. A reasonable jury could find her protected speech was a motivating factor. One factor is the recommendation Plaintiff be discharged for immorality instead of administrative alternatives such as verbal counseling at the time of the incident or at most a written warning. Room for the inference of discriminatory animus expands considerably . An arrest of a public school teacher whose career is put in jeopardy by a stigmatic public charge is shocking.   The supplies were of insignificant moment   to warrant such drastic action. The inference of retaliation is reasonable. Merkle v. Upper Darby S.D., 211 F. 3rd 782, 788-789 (3rd Cir. 2000). Animus was established where Plaintiff left a note complaining about a police officer on the police station door and was prosecuted where

20

his wife testified the police chief said he would get her husband and have him arrested for writing the letter and his daughter heard him say  "I am going to get your husband back" to her. <u>Losch v. Borough of Parkesburgh</u>, 736 F. 2nd 903 (3rd Cir. 1984). The case may be established by proof Plaintiff was treated differently than similarly situated persons who had not engaged in the protected activity. <u>Sass v. M.T.A. Bus. Company</u>, 6 F. Supp. 3rd 229, 235 (E.D.N.Y. 2014).

4.   Qualified Immunity

The court may not simply accept what may be a selfserving account by the officer but must also look to circumstantial evidence that if believed would tend to discredit the officer's story and consider whether the evidence could convince a rational fact finder that the officer acted unreasonably. <u>Abraham v. Raso</u>, 183 F. 3rd 278, 294 (3rd Cir. 1999). In light of preexisting law, the unlawfulness must be apparent. The information the officer possessed is important. <u>Anderson v. Creighton</u>, 483 U.S. 635, 641 (1987).

C. Proposed Findings of Fact and Conclusions of Law

1.Defendant issued a citation for Defiant Trespass under 18 Pa. C.S.A. §3503(b)(1) against Plaintiff. On June 26, 2012, Judge Cronin of the Delaware County Court of Common Please dismissed the charges. P-16. The outcome was favorable to Plaintiff.

2.   Defendant stated VFMA staff told him the sign in P-1 was posted. Exhibit D-11, page 10. He never stated where they told him the signs

were. No writing confirms this. Id., 31-34. It is undisputed that there were

no "no trespassing" signs, signs requiring authorization to enter the

campus or speak to anyone including or to register, at any entrance to the

campus, at Martin Hall or the parking lot where Plaintiff parked

December 12, 2011. Seitz, Exhibit D-14, pages 11-12., 29. Geiling,

Exhibit D-15, pages 8-9 (at general parking lot—not the one Plaintiff

parked at, which is shown at P-10—and Chapel gate only); Considine,

Exhibit D-10, pages 27-29. There is no evidence of actual knowledge he

was not permitted to be on campus or interview the cadets. No contrary

evidence exists, so no reasonable jury could find evidence that notice

posted in a manner prescribed by law or reasonably likely to come to the

person's attention at each entrance to school grounds that visitors are

prohibited without authorization from a designated school, center or

program official under 18 Pa. C.S.A. §3503(b)(1).    Defendant did not

check the entrances or attempt to find out if Plaintiff knew he was not

permitted access. Exhibit D-11, page 10. No one told Plaintiff to leave the

premises or that he could not be there, so the notice requirement is not

met.Wright v. City of Philadelphia, 409 F. 2nd 595 (3rd Cir. 2005),   Com. v.

Namack, 444 Pa. Super. 9, 663 A. 2nd 191 (1995). There were "no

trespassing" signs required under §3503(b)(1), Commonwealth v.

McSherry, 32 Pa. D. & C. 215 (1938). There is no restricted access or

security gate and anyone can walk onto campus. Exhibit

22

P-6,7,8,9,10,11,12,13,14 and 15. He entered at entrance E-5 and parked in the back parking lot and went to Martin Hall. None of these areas had signs indicating there was a requirement of registration or permission to enter campus. Id. The only signs in evidence stated registration was required M-F 9-5 p.m. and check in was required after hours. They were placed near Radnor Street Road. P-1. P-5. A reasonable person could enter campus and not see them and Plaintiff testified he did not see them when he did. There is no evidence Plaintiff had actual knowledge of the signs or viewed the website. He testified he did not. The statute requires actual knowledge. 18 Pa. C.S.A. §3503 (b) (1). There is no evidence what the website or handbook contained on 12/12/11, only as of 2012. Exhibits D-6 and 17. There was no sign at Martin Hall or banning speaking to cadets.. Phillips, Exhibit D-13, page 22 and 27-28. Even if the signs were reasonably able to be seen, of which there is no evidence, they do not ban entry, state registration is a prerequisite for entry or speaking to a cadet. or state that entry is prohibited without authorization as required under the statute. Exhibits D-1, P-1 and P-5. The premises nowhere had signs reasonably likely to come to the person's attention at each entrance to school grounds that visitors are prohibited without authorization from a designated school, center or program official. No signs ban entry. If there were signs requiring signing in, they were not where he could see them, nor did they ban entry without doing so.

23

3. Defendant claims registration is the same as authorization as being unregistered means there is no authority to be on campus. Exhibit D-11, pages 22-24, 27-30. Register means "o write a list or record or have one's name written in a record". Thorndike Barnhart Comprehensive Desk Dictionary, page 654 (Doubleday and Co., Inc. 1967). Authorize means "to give power or a right to. To make legal, sanction, to give authority for, justify," id, page 84.   The statute requires that signs be posted requiring authorization, not registration. None required the former. The words have meanings which are distinct. Seitz said permission was not required. Exhibit D-14, pages 23-24. No reasonable juror could find the signs required authorization.

4. Reasonable grounds of suspicion must not be based on an inadequate or unreasonable investigation. Wainaukis v. Howard Johnson Co., 339 Pa. Super. 256, 488 A. 2nd 1117 (1985). Defendant did not deny that he did not leave his name or ask Plaintiff to call in the phone message. He admitted there was no reason he did not call Plaintiff to find out what happened. He did not leave a message asking Plaintiff to call him so he could find out if he knew he was not permitted on campus or read the signs. Exhibit D-11, pages 20, 35-36. He never checked for signs. He said he does not know what parking lot Plaintiff parked in and there is no way to determine how he entered the campus. id., id, 35-36. Yet the VFMA staff stated they spoke to Plaintiff in the lot where he was and there is only

24

one entrance, E-5, that leads to that lot. He admitted there is no evidence of actual knowledge of Plaintiff. This was a rushed citation with unreasonable investigation. The citation was issued without probable cause.

5. He admitted that in other cases where he charged a person with defiant trespass the Defendant refused to leave after being asked. He knew Plaintiff was an attorney there to interview witnesses for a client, which is a legitimate activity, protected by the 1st Amendment. Stanley v. Gore, 394 U.S. 557, 564 (1969), Pa. Family Institute, Inc. v. Black, 489 F. 3rd 156 (3rd Cir. 2007), Press-Enterprise Company v. Superior Court, 478 U.S. 1, 8 (1986), Virginia State Board of Pharmacy v. Va. Citizens Consumer Council, Inc., 425 U.S. 748 (1976). He states it was not right for him to interview minors without their parents' permission, but the law does not require this and this may have precluded his obtaining the information he needed as their permission may not have been granted. There is no evidence he lured a minor into a building but only that he was invited in by Settinieri. The handbook and policies are dated ©2012, after the incident. There is no evidence of the handbook or policies as of 12/12/11. The signs only require registration. None bans entry without permission or requires authorization to speak to a cadet.

6. Defendant and other witnesses state what Plaintiff did was against the rules yet not one rule banning it was referred to. Babin said others came

25

onto campus to speak to cadets. They were not cited. VFMA states that police will be called when there is a felony, violence or major property loss. None occurred here but they were called. Plaintiff is the first person in 23 years at VFMA ever issued a citation for defiant trespass where he was not asked to leave and did not refuse to leave according to Seitz. No one else was ever given a citation for being on campus one time. Zullo, Creegan, Whitesal, Flood, Robinson, Grave and Crosby were all given warning letters. The only other person issued such a citation was asked to leave, refused and was handcuffed. All other persons VFMA academy wanted excluded were given a warning or letter. This is the first time Defendant ever issued a citation for defiant trespass where the offender did not refuse to leave when asked. Phillips admitted citations are issued for those who return after being warned. Exhibit D-13, pages 25-27. He did not do so here because the situation was developing and they did not know what happened. But the e-mails reveal they did know there was no emergency, and no reason to believe Plaintiff would return.

7. Defendant argues this matter is different because Plaintiff was in the dorm. But even it was to interview witnesses, the protected activity. It is not disputed Settinieri invited him to come to Martin Hall. Babin stated the handbook says one may not speak to cadets but it does not state that. Exhibit D-16, page 12. Others did so without a citation. Id., page 13. No signs banned speaking to minors. Id., page 15. Settinieri invited Plaintiff

26

in. Exhibit D-10, page 14. Phillips admitted Plaintiff's conducting business was the issue. Exhibit D-13, pages 26-27. Plaintiff may establish liability under the but-for standard even if other factors contributed to Defendant's taking an adverse action as long as the protected characteristic was the factor that made a difference. University of Texas Southwest Medical Center   v. Nassar, 133 S. Ct. 2517, 2533 (2013). Defendant claims what distinguishes this case from others involving intruders on campus is that there   was conversation with minor cadets in their dorm room. Even then, the distinguishing factor is communication by an attorney with witnesses. None of the other cases involved such communication. That is the only factor to a reasonable jury could have made the difference. No record in existence in 2011 stated Plaintiff could not enter a dorm when invited in by a resident for a legitimate business purpose. The inference of retaliation is reasonable. Merkle v. Upper Darby S.D., 211 F. 3rd 782, 788-789 (3rd Cir. 2000). Defendant, Pinto and VFMA staff all knew Plaintiff was an attorney interviewing cadets for a client at the time of the incident. They had his business card. The only difference between what Plaintiff did and the actions of all others who were excluded from or asked to leave the campus was obtain information from cadets. Defendant knows of no other times he issued a citation for defiant trespass where the person did not refuse to leave. Nor do any of the VFMA witnesses.

27

8. Plaintiff stated Defendant told him he was not ever permitted to return to the campus, not that VFMA told him this. Defendant does not dispute this. He states he cannot recall what he said. Exhibit D-11, page 20. Defendant himself has no right to exclude anyone from any property. Here is constitutionally protected conduct—interviewing of witnesses and communicating with them. That this occurred is undisputed. There was retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights—a citation for defiant trespass forcing Plaintiff to go to court 4 times. There is a causal link between the constitutionally protected conduct and the retaliatory action in that the citation was for the protected activity. Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006). Receiving a citation, and being forced to go to court 4 times is sufficient to deter a person of ordinary firmness from exercising his First Amendment rights. McKee v. Hart, 436 F.3d 165, 170 (3d Cir.2006));   Crawford–El v. Britton, 523 U.S. 574, 589 n.10 (1998). There was the implied threat of arrest for returning, without Defendant stating VFMA told him to state that. This is more than a de minims impact on plaintiff's First Amendment rights. McKee, 436 F.3d at 170. Defendant had no such authority. The activity of communication is what prompted the arrest without probable cause. Permission to speak to a cadet was based on what they would speak about. The First Amendment retaliation

claim has been established because a reasonable juror could not point to any other reason for the citation other than the witness interviews.

9. The cadets willingly spoke to him, never stated they did not want to and never complained. Settinieri invited Considine inside. There is an important business purpose in his activities: to interview witnesses, which it is likely he would have no access to except by going on the premises and meeting with them in person. A legitimate business purpose protects access to the property. Burford v. Rainey, 42 C.C. 137, 62 Pittsburgh 219 (1913).There is no probable cause to issue a citation under 18 Pa. C.S.A. §3503(b)(1).

10. There is malice here. Defendant lied in the citation. It states Plaintiff' "knowing he was not privileged to do so, entered the premises at Martin Hall. Notices posted at schools entrances advise visitors of required authorization." Exhibit D-9. There is no evidence of actual knowledge or even knowledge a reasonable person would have had under the facts here. No notices were posted at entrances. All VFMA witnesses deny it emphatically. Defendant stated he would have issued the citation even if he knew there were no signs in the areas Plaintiff was and he had no actual knowledge of registration requirements. Exhibit D-11, pages 41-42. This shows malice. He could have had a letter written or a warning, which is the normal procedure. Normally police are called only for felonies, serious property damage or   violence. D-6. None occurred here. Visitors not in

29

compliance with the rules are asked to leave. Id. Instead, a citation was issued. He made no effort to inquire if Plaintiff had such actual knowledge. The notice in D-1, the only one on campus, does not require authorization. He claims to have asked unnamed VFMA staff about signs. But all the witnesses who testified state that there were no such signs at every entrance and in fact none at any entrance. Exhibits P-14 and 6-15 confirm this. Defendant could have obtained an affidavit on this issue but did not. It is undisputed there were no such signs at any entrance. It is also undisputed that there was no reasonable threat Plaintiff would return and no need to hurry to write the citation without doing investigation to see if the allegations on it were truthful. Defendant also does not deny saying in the phone message that Plaintiff was never allowed to return to the campus—and never states he said VFMA stated he was not allowed to return to the campus. Exhibit D-10, pages 31-32. He has stated a lifetime ban which he had no power to impose. Defendant acted maliciously or for a purpose other than to bring Plaintiff to justice. No affidavits contradict Plaintiff, who stated that Defendant did not tell him VFMA told him he could not come back to the campus but that Defendant said he was banned for life, which indicates malice.

11. There is no evidence the issuance of the citation was for any reason other than Plaintiff's speaking to the cadets or that a reasonable person would have known doing so was not permitted.   As there is no genuine

issue of material fact, the court should grant Plaintiff's Motion for

Summary Judgment on the Malicious Prosecution and First Amendment

Retaliation claims and declare that the rights of Plaintiff under the First

Amendment were violated.

 Date: January 29, 2015          s/ J. Michael Considine, Jr.

                                J. Michael Considine, Jr.
                                1845 Walnut Street, Suite 1100
                                Philadelphia, PA 19103
                                (215) 564-4000


                                Williams, Cuker and Berezofsky

                                s/ Gerald J. Williams
                                Gerald   J. Williams
                                Christopher Marcos
                                1515 Market Street, Suite 1300
                                Philadelphia, PA 19102
                                (215)557-0099
                                Counsel for Plaintiff

                        Certificate of Service

   I, J. Michael Considine, Jr. hereby certify that I filed electronically the
Motion for Summary Judgment and in so doing transmitted it to Robert P.
Di Domenicis, Esquire, Holston and Associates, 1 South Olive Street,
Media, PA 19063

Date: January 29, 2015          s/J. Michael Considine, Jr.