IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| J. MICHAEL CONSIDINE, JR., | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 13-7263 |
| | : | |
| v. | : | |
| | : | |
| JONATHAN J. JAGODINSKI, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

Smith, J.                                                                       April 9, 2015

The plaintiff brings this action seeking compensatory and declaratory relief against the defendant, a Radnor Township police officer, for wrongfully citing him for defiant trespass on the premises of the Valley Forge Military Academy.  The plaintiff asserts claims under 42 U.S.C. § 1983 for violations of his First and Fourth Amendment rights and a state-law claim for malicious prosecution.  The parties have filed cross-motions for summary judgment, with the defendant moving for summary judgment on the grounds that he is entitled to qualified immunity, he had probable cause to issue the citation, and the plaintiff has not established a First Amendment violation.  The court agrees and, accordingly, will grant the defendant's motion for summary judgment and deny the plaintiff's motion for summary judgment.

## I.       ALLEGATIONS AND PROCEDURAL HISTORY

On December 12, 2013, the plaintiff, J. Michael Considine, Jr., commenced this action by filing a complaint against the defendant, Officer Jonathan J. Jagodinski of the Radnor Township

Police Department.[1]  Doc. No. 1.  Prior to service of the complaint, the plaintiff filed an amended

complaint on February 2, 2014.[2]  Doc. No. 4.

In the amended complaint, the plaintiff alleges that in December 2011, he visited the

Valley Forge Military Academy ("VFMA") in Radnor, Pennsylvania to interview witnesses on

behalf of clients he was representing as an attorney.[3]  Am. Compl. at ¶¶ 5-6, 8.  The plaintiff

alleges that, at the time he visited VFMA, the school did not have notices posted at the entrances

advising visitors that they were required to obtain authorization to visit the premises.  *Id.* at ¶ 19.

Additionally, no one ever told the plaintiff to leave the premises and he never refused to leave.

*Id.* at ¶ 20.

The plaintiff entered the premises by a road leading to a parking lot, and neither the

entrance to the road nor parking lot had "no trespassing" signs, or signs indicating that

permission or registration was required to enter the campus.  *Id.* at ¶ 25.  Once on the campus,

the plaintiff saw a cadet, and asked him if he knew Marcos Settinieri.[4]  *Id.* at ¶ 8.  Coincidentally,

this cadet was Mr. Settinieri.  *Id.*  Mr. Settinieri agreed to speak with the plaintiff and invited him

inside Martin Hall.  *Id.*  The plaintiff spoke with Mr. Settinieri and another witness named Josh

Bernstein, received information from them, and left his business card with Mr. Settinieri.[5]  *Id.* at

¶¶ 8-9.

---

[1] At the time, the plaintiff was proceeding *pro se*.

[2] Prior to the filing of the amended complaint, Samuel C. Stretton, Esquire, entered an appearance on the plaintiff's behalf.  Doc. No. 3.  Later in the case, Attorney Stretton withdrew his appearance and new counsel entered appearances on the plaintiff's behalf.  Doc. Nos. 28, 37, 51-53.

[3] While both parties refer to the school as Valley Forge Military Academy, the court notes that some of the exhibits provided by the defendant indicate reference to a Valley Forge Military Academy and College.  *See, e.g.*, Mot. for Summ. J. of Officer Jonathan J. Jagodinski to Pl.'s Am. Compl. ("Def.'s Mot. for Summ. J.") at Ex. D17, Visiting VFMA&C.  The court is unaware of whether the academy and the college are distinct entities or what relationship exists between the two, but, for the purposes of this opinion, will refer to the school as Valley Forge Military Academy, or VFMA.

[4] The plaintiff's client thought Mr. Settinieri was an eyewitness to an incident involving their grandson at VFMA.  Am. Compl. at ¶¶ 7-8.

[5] A videotape showed the plaintiff entering the building.  Am. Compl. at ¶ 10.

At some point, staff from VFMA received information about the plaintiff's presence at VFMA, spoke to Mr. Settinieri about it, and then called the police. *Id.* at ¶ 11. The VFMA staff provided the police with the plaintiff's name, address, and phone number. *Id.* On December 13, 2011, the defendant left a message on the plaintiff's answering machine stating that he was not permitted to return to VFMA and that he would receive a citation. *Id.* at ¶ 12. Weeks later, the plaintiff received a citation for defiant trespass under 18 Pa. C.S. § 3503(b)(1). *Id.* at ¶ 18.

The plaintiff alleges that the defendant "issued the citation in retaliation for and in a deliberate attempt to punish [him] for and intimidate him into not conducting any further investigation into a matter involving VFMA and to keep him from obtaining information from willing witnesses in the Deshais and future matters," (sic). *Id.* at ¶ 33. At a magistrate's hearing on April 18, 2012, a magisterial district court judge found the plaintiff guilty of defiant trespass. *Id.* at ¶ 21. The plaintiff appealed this decision and the Delaware County Court of Common Pleas found him not guilty.[6] *Id.* at ¶¶ 22-23.

Based on the aforementioned allegations, the plaintiff asserts causes of action against the defendant for (1) violation of his First Amendment rights under 42 U.S.C. § 1983, (2) declaratory judgment under 28 U.S.C. § 2201 for the violation of his First Amendment rights, and (3) malicious prosecution.[7] *Id.* at ¶¶ 35-45. Apparently, the defendant did not respond to the amended complaint and, after the Honorable Paul S. Diamond's deputy clerk sent a letter to the plaintiff noting the failure to respond, the plaintiff moved for the entry of default on March 26, 2014. Doc. Nos. 7, 8. The defendant filed a response to the motion for entry of default and a

---

[6] The plaintiff testified in his deposition that the defendant did not appear for the summary appeal before the Court of Common Pleas. Def.'s Mot. for Summ. J., at Ex. D10, Dep. of J. Michael Considine at 37. Once the defendant failed to appear, the plaintiff moved for dismissal and the court granted the motion. *Id.* The plaintiff also explained to the judge what the case was about, but did not give any testimony under oath. *Id.* at 38.

[7] The plaintiff did not specify in his amended complaint whether he is asserting a malicious prosecution claim under federal or state law; however, in his response in opposition to the defendant's motion for summary judgment, and at oral argument, the plaintiff supplied arguments under both theories. Pl.'s Resp. to Def.'s Mot. for Summ. J. ("Pl's Resp.") at 16-17, 22. The court addresses both legal theories in this opinion.

motion seeking to vacate and set aside the entry of default on April 1, 2014.  Doc. No. 10.  Judge Diamond entered an order denying the motion for entry of default on April 2, 2014.  Doc. No. 11.  The defendant then filed an answer to the amended complaint on April 4, 2014.  Doc. No. 12.

The Honorable Petrese B. Tucker reassigned this case from Judge Diamond to the undersigned on April 22, 2014.  Doc. No. 17.  The court had an initial pretrial conference with counsel on May 28, 2014, and issued a subsequent scheduling order.  Doc. Nos. 24, 25.  The defendant filed a motion for summary judgment on January 15, 2015.  Doc. No. 55.  The plaintiff filed a response in opposition to the motion on February 12, 2015.  Doc. Nos. 62, 63.

The plaintiff filed a motion for summary judgment on January 29, 2015.  Doc. Nos. 59, 60.  The defendant filed a response in opposition to the plaintiff's motion for summary judgment on February 9, 2015.  Doc. No. 61.  The plaintiff filed a reply brief on February 24, 2015.  Doc. No. 65.  The defendant filed a surreply on February 27, 2015.  Doc. No. 66.  The court held oral argument on the cross-motions on March 12, 2015.  The cross-motions are now ripe for disposition.

## II.    DISCUSSION

In the plaintiff's motion for summary judgment, he argues that he is entitled to summary judgment because the defendant did not have probable cause to issue the citation.[8]  Pl.'s Mot. for Summ. J. at 24-25, 29.  In response to the plaintiff's motion, the defendant argues that (1) he had probable cause to issue the citation as a matter of law, and (2) the First Amendment cases cited by the plaintiff are merely broad statements of the law without any application to the facts of this

---

[8] Although the court has ascertained that the plaintiff is arguing the lack of probable cause as the basis for the court to grant summary judgment, the court notes that the motion cites case law regarding First Amendment rights but does not provide any legal argument or factual analysis as to why or how that case law supports  a finding that the plaintiff's First Amendment rights were violated based upon the facts in this case

case, and in any case are inapposite.  Mem. of Law in Opp. to Pl.'s Mot. for Summ. J. on Behalf of Def. Officer Jonathan J. Jagodinski ("Def.'s Opp.") at 1-7.

In the defendant's motion for summary judgment, he contends that (1) the plaintiff has not established a claim for malicious prosecution under federal law because he has not suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding; (2) the plaintiff has not established a claim for malicious prosecution under Pennsylvania law because the defendant had probable cause to issue the citation; (3) the plaintiff has not established a First Amendment violation; and (4) even if he violated the plaintiff's First Amendment rights, he is entitled to qualified immunity.  Def.'s Mot. for Summ. J. at 22-34.  In response to this motion, the plaintiff argues that he (1) was given the citation in retaliation for exercising his right to free speech under the First Amendment; (2) the elements of defiant trespass were not present when the defendant issued the citation; (3) the defendant did not have probable cause to issue the citation; (4) with respect to the federal malicious prosecution claim, an issue of fact exists as to whether there was a seizure; (5) qualified immunity is inappropriate because a reasonable officer would know that arresting the plaintiff would violate clearly established law, because the police cannot arrest a person for defiant trespass without notice.[9] Pl.'s Resp. at 15-24.

## A.   <u>Standard of Review – Summary Judgment</u>

A district court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Additionally, "[s]ummary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

---

[9] As with his motion for summary judgment, the plaintiff's response to the defendant's motion for summary judgment contains a great deal of case law and references to legal principles, but little in the way of legal analysis or application of those cases and principles to the facts of this case.

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995)).  An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

The party moving for summary judgment has the initial burden "of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  Once the moving party has met this burden, the non-moving party must counter with "'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted); *see* Fed. R. Civ. P. 56(c) (stating that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . .; or . . . [by] showing that the materials cited do not establish the absence . . . of a genuine dispute").  The non-movant must show more than the "mere existence of a scintilla of evidence" for elements on which the non-movant bears the burden of production. *Anderson*, 477 U.S. 242, 252 (1986).  Bare assertions, conclusory allegations, or suspicions are insufficient to defeat summary judgment. *See Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982) (indicating that a party opposing a motion for summary judgment may not "rely merely upon bare assertions, conclusory allegations or suspicions"); *Ridgewood Bd. of Educ. v. N.E. for M.E.*, 172 F.3d 238, 252 (3d Cir. 1999) (explaining that "speculation and conclusory allegations"

do not satisfy non-moving party's duty to "set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor.")  Additionally, the non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000).  Moreover, arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985).

"When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).  The court must decide "not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial[]'" and the court should grant summary judgment in favor of the moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citation omitted).

The summary judgment standard is the same even when, as here, the parties have filed cross-motions for summary judgment. *Erbe v. Connecticut Gen. Life Ins. Co.*, No. CIV.A.06-113, 2009 WL 605836, at *1 (W.D. Pa. Mar. 9, 2009) (citing *Transguard Ins. Co. of Am., Inc. v. Hinchey*, 464 F. Supp. 2d 425, 430 (M.D. Pa.2006)).  "When confronted with cross-motions for summary judgment, . . . 'the court must rule on each party's motion on an individual and

separate basis, determining, for each side, whether a judgment may be entered in accordance with the summary judgment standard.'" *Id.* (citing *Transguard*, 464 F. Supp. 2d at 430).

## B.   <u>Analysis</u>

### 1.   **The Defendant's Motion for Summary Judgment**

As noted above, because the court must rule on each party's motion on an individual and separate basis, the court will address the defendant's motion for summary judgment first, while viewing the facts in a light most favorable to the plaintiff.

#### a.   <u>First Amendment Retaliation Claim</u>

To state a claim for retaliation in violation of the First Amendment, a plaintiff must show "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Zimmerlink v. Zapotsky*, 539 F. App'x 45, 48 (3d Cir. 2013) (citation omitted).  Regarding the first element of this claim, the plaintiff identifies his constitutionally protected conduct as the right to interview witnesses as an attorney, and he appears to believe that right is unconditional.  *See* Pl.'s Mot. for Summ. J. at 6-7, ¶ 28 ("An attorney has an absolute right to interview minors."); Pl.'s Resp. at 9, ¶ 65 ("It was illegal and chills the exercise of protected speech to issue a citation under these circumstances."). Though he admits that the VFMA is a private, fenced-in campus, he argues these facts are irrelevant since (1) he was invited inside by a student, and (2) there was neither the need to obtain permission, nor was there any sign or notice anywhere that stated that he needed permission to enter.[10]  Pl.'s Resp. at 4, ¶ 20.

---

[10] The plaintiff admits elsewhere in his pleadings that there are two signs notifying visitors of their need to register, and one is posted near Radnor Road, the street that runs the length of the campus.  Pl.'s Resp. at 2, 25.  He argues that he did not see these signs.  *Id*. at 2.  He also argues that the effect of these signs is to require registration, not permission, and that the two are distinct.  *Id*. at 5.

Despite these arguments, the plaintiff cannot avoid the contradictory averments in his pleadings. In particular, the plaintiff admits that no one invited him onto the campus; instead, once he had already entered the campus without registering, the cadet he was speaking with invited him into his dormitory room to speak. Am. Compl. at ¶ 8 ("Plaintiff went to VFMA. . . . Plaintiff stood on the campus outside Martin Hall and asked the first person who he saw if he knew Marcos [Settinieri]. . . . Settinieri agreed to speak to Plaintiff and invited him inside Martin Hall."). The plaintiff also admits that the VFMA had two posted signs. Pl.'s Resp. at 2; ¶ 7. The first sign stated: "NOTICE TO ALL VISITORS[.] TO ENTER MAIN CAMPUS, FOLLOW WALKWAY TO END AND CROSS RADNOR STREET ROAD. ALL VISITORS MUST REGISTER AT THE ADMISSION OFFICE IN MEDENBACH HALL OR CAMPUS SECURITY AT LEE HALL" ("Notice to all Visitors #1"). Pl.'s Mot. for Summ. J. at Ex. P-5. The second sign stated: "NOTICE TO ALL VISITORS[.] FROM 8 AM - 4 PM, MONDAY - FRIDAY, ALL VISITORS **MUST** REGISTER AT THE ADMISSION OFFICE IN MEDENBACH HALL. ALL OTHER TIMES, VISITORS MUST REGISTER WITH CAMPUS SECURITY AT LEE HALL" ("Notice to all Visitors #2"). Pl.'s Mot. for Summ. J. at Ex. P-1.

Given that the VFMA campus was private property, and the plaintiff was not invited onto the campus or granted permission to be on the campus by registering with campus security, the plaintiff's conclusions about the bounds of his constitutional rights are misplaced. The plaintiff does not have a First Amendment right to interview witnesses anywhere he pleases. "[T]he constitutional guarantee of free speech is a guarantee only against abridgment by *government*, *federal or state*," not private parties. *Hudgens v. N.L.R.B.*, 424 U.S. 507, 513 (1976) (emphasis added); *see also Lloyd Corp. v. Tanner*, 407 U.S. 551, 567 (1972) ("[T]he First and Fourteenth

9

Amendments safeguard the rights of free speech and assembly by limitations on *state action*, not on action by the owner of private property used nondiscriminatorily for private purposes only.") (emphasis added)).  "[The Supreme] Court has never held that a trespasser or an uninvited guest may exercise general rights of free speech on property privately owned and used nondiscriminatorily for private purposes only."  *Lloyd Corp.*, 407 U.S. at 568.  Instead, "[t]he right to exclude others is a fundamental element of private property ownership, and the First Amendment does not create an absolute right to trespass."  *Armes v. City of Philadelphia*, 706 F. Supp. 1156, 1164 (E.D. Pa. 1989) (citations omitted), *aff'd sub nom.*, *Armes v. Doe*, 897 F.2d 520 (3d Cir. 1990).

The plaintiff does not and could not argue that VFMA was a state actor or that the campus was public property.  VFMA did not allow the public to walk through its campus freely. Rather, VFMA had strict policies with regard to visitors: "All visitors, to include the parents or guardians of a cadet currently enrolled in the Corps, must secure a Visitors Pass at Medenbach Hall when arriving on Main Campus 8:30AM Monday through 4:00PM Friday afternoon. Visitors who arrive on campus after normal working hours, Monday through Friday must secure a Visitors Pass at Lee Hall."  Def.'s Mot. for Summ. J. at Ex. D7, VFMA Mem. on Campus Security & Visitor Passes, Mar. 10, 2008.  Outside organizations and businesses that regularly come on campus are registered and monitored on a roster of authorized individuals maintained by the VFMA department that oversees the area.  *Id.*  The only persons authorized to be on the campus without first obtaining a visitor pass or being added to a roster of authorized individuals are drivers and delivery persons for the U.S. Postal Service, Fed Ex, and UPS who are making deliveries to the mailroom, visitors attending athletic events in the Price Hall Complex, a parent or guardian signing out a cadet from the Health Center or Cadet Barracks, or visitors attending

10

special events.  *Id.*; Def.'s Mot. for Summ. J. at Ex. D17, Visiting VFMA&C.  The plaintiff did not fall into any of these categories, and there is no evidence that there was a special or athletic event occurring on the evening that he visited the campus.  Furthermore, property does not "lose its private character merely because the public is generally invited to use it for designated purposes."  *Lloyd Corp.*, 407 U.S. at 569.  Simply put, because the plaintiff was on private property, "he cannot invoke the protection of the First Amendment."  *See Billman v. Corbett*, No. CIV.A. 10-2996, 2011 WL 605814, at *4 (E.D. Pa. Feb. 15, 2011).

Because the plaintiff is unable to establish an essential element of his First Amendment retaliation claim, that he was engaged in constitutionally protected conduct, the court will deny the plaintiff's motion for summary judgment and grant summary judgment in favor of the defendant on the plaintiff's First Amendment claims in counts I and II of the amended complaint. Under this disposition, the court need not reach the issue of whether the defendant is entitled to qualified immunity.

b.    <u>Federal Malicious Prosecution Claim</u>

To prevail on a malicious prosecution claim brought under section 1983, the plaintiff must show:

> (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)).  Because the record in this case clearly demonstrates that the plaintiff cannot establish the fifth element, *i.e.* he cannot show that he was subjected to a "seizure," the court need not address the remaining four elements.

11

Case 2:13-cv-07263-EGS   Document 73   Filed 04/09/15   Page 12 of 18

The plaintiff was never arrested in connection with his defiant trespass charge, and was only burdened by having to attend the magisterial court hearing and subsequent Court of Common Pleas hearing. Nonetheless, the plaintiff argues that because he, "a licensed attorney[, was] subject to sanctions for a criminal conviction, was required to contest the charges against him, to attend all hearings and incur the expenses required for his defense," he suffered a seizure. Pl.'s Resp. at 21. He contends that these facts are similar to the Third Circuit's decision in *Gallo v. City of Philadelphia*, 161 F.3d 217, 222 (1998), *as amended* (Dec. 7, 1998). Unfortunately for the plaintiff, his reliance on *Gallo* is misplaced and his arguments are completely contradictory to the applicable law.

In this regard, the Third Circuit has determined, in a case similar to this case, that the issuance of a citation and the requirement of attending court for purposes of defending the charge in the citation do not constitute a "seizure" sufficient to satisfy the final element of a malicious prosecution claim. *See DiBella*, 407 F.3d at 602-03. In *DiBella*, the police had issued each of the plaintiffs, two candidates for the governing body of a New Jersey borough, a summons for defiant trespass, which was a "petty disorderly offense" under New Jersey law. *Id.* at 600. After the plaintiffs prevailed in the underlying criminal proceedings, they brought a 42 U.S.C. § 1983 action for malicious prosecution against multiple defendants. *Id.* at 600, 601.

Although the plaintiffs eventually prevailed in a jury trial, the trial court entered "judgment for the defendants after finding that their attendance at pretrial and trial hearings did not constitute a government 'seizure' in a 42 U.S.C. § 1983 malicious prosecution action predicated on the Fourth Amendment." *Id.* at 600-01. The plaintiffs appealed from this decision and the Third Circuit affirmed.

In affirming the district court, the Third Circuit pointed out that "prosecution without probable cause is not, in and of itself, a constitutional tort[;] [instead, t]he type of constitutional injury the Fourth Amendment is intended to redress is *the deprivation of liberty accompanying prosecution, not prosecution itself*." *Id.* at 602-03 (internal citations and quotation marks omitted) (emphasis added). The court also discussed *Gallo* and noted that *Gallo* was a "close question" involving a plaintiff that "was arrested for arson and posted a $10,000 bond; he was prohibited from traveling outside Pennsylvania and New Jersey, required to contact Pretrial Services on a weekly basis, and required to attend all court hearings including his trial and arraignment." *Id.* at 602.

> The court then explained that
>
> [i]f Gallo was a "close question;" here there could be no seizure significant enough to constitute a Fourth Amendment violation in support of a Section 1983 malicious prosecution action. Gallo was arrested and subjected to significant pretrial restrictions. DiBella and McLaughlin were only issued a summons; they were never arrested; they never posted bail; they were free to travel; and they did not have to report to Pretrial Services. Their liberty was restricted only during the Municipal Court trials and the Fourth Amendment does not extend beyond the period of pretrial restrictions.

*Id.* at 603. As such, the court concluded that "[p]retrial custody and some onerous types of pretrial, non-custodial restrictions constitute a Fourth Amendment seizure. [The plaintiffs] failed to state a cause of action for malicious prosecution because their attendance at trial did not qualify as a Fourth Amendment seizure." *Id.*

Similar to the plaintiffs in *DiBella*, the plaintiff here was not subject to any pretrial custody or any "onerous types of pretrial, non-custodial restrictions." *Id.* The defendant did not arrest him, he was not incarcerated or otherwise placed in a position where he would have to post bail to avoid incarceration, no restrictions were placed on his ability to travel, and he did not have to report to pretrial services. Although the plaintiff generally claims that there is a question

of fact on this issue, *see* Pl.'s Resp. at 21, he has not cited to any evidence to substantiate this claim and the applicable case law directly opposes his position that he was subject to a seizure. Therefore, because he did not suffer a seizure as a matter of law, he is unable to prove an essential element of the section 1983 malicious prosecution claim, and the court will grant summary judgment in favor of the defendant on this claim as well.

        c.     <u>Pennsylvania State Law Malicious Prosecution Claim</u>

Under Pennsylvania law, a cause of action for malicious prosecution requires that the defendant "instituted proceedings against the plaintiff 1) without probable cause, 2) with malice, and 3) the proceedings must have terminated in favor of the plaintiff." *Kelley v. General Teamsters, Chauffeurs & Helpers, Local Union 249*, 544 A.2d 940, 941 (Pa. 1988).  The burden is on the plaintiff to show that the officer lacked probable cause. *Hugee v. Pennsylvania R. Co.*, 101 A.2d 740, 742 (Pa. 1954).  "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995) (citation omitted). "Thus, 'the probable cause standard does not turn on the actual guilt or innocence of the arrestee, but rather, whether the arresting officer reasonably believed that the arrestee had committed the crime.'" *Lischner v. Upper Darby Twp.*, No. CIV.A. 05-4546, 2007 WL 433170, at *3 (E.D. Pa. Feb. 5, 2007) (quoting *Radich v. Goode*, 886 F.2d 1391, 1397 (3d Cir. 1989)).

Under Pennsylvania law, probable cause to issue a citation for defiant trespass exists when the facts and the circumstances within the officer's knowledge are sufficient for a reasonable person to believe that the accused,

> knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by:

14

> (i) actual communication to the actor;
> (ii) posting in a manner prescribed by law or reasonably likely to come to the attention of intruders;
> (iii) fencing or other enclosure manifestly designed to exclude intruders;
> (iv) notices posted in a manner prescribed by law or reasonably likely to come to the person's attention at each entrance of school grounds that visitors are prohibited without authorization from a designated school, center or program official; or
> (v) an actual communication to the actor to leave school grounds as communicated by a school, center or program official, employee or agent or a law enforcement officer.

18 Pa. C.S. § 3503. With respect to the scienter requirement, the Third Circuit has held that even if a person lacks the requisite knowledge that they are not licensed or privileged to enter or remain as required under the statute, it is not dispositive, as the court "must evaluate whether the totality of the circumstances was sufficient to justify a reasonable belief on the part of the officers that [the person] had committed a crime." *Wright v. City of Philadelphia*, 409 F.3d 595, 603 (3d Cir. 2005).

Viewing the facts in the light most favorable to the plaintiff, the court assumes that he entered the campus for the purpose of interviewing witnesses on a matter that he was investigating as an attorney. The court also assumes that the plaintiff genuinely believed that he was not trespassing, that registration or permission was not required to enter the campus, and that permission from the cadets to enter their dormitory room was sufficient to transform him from a trespasser to a guest. The inquiry is not, however, whether the plaintiff was guilty or innocent of the crime of defiant trespass, but whether there was probable cause to issue a citation for defiant trespass.

The undisputed facts that were known to the defendant are that VFMA is a private institution which is surrounded by fencing and gated entrances, which are sometimes left open. Def.'s Mot. for Summ. J. at 14, ¶ 58; Pl.'s Resp. at 8, ¶ 58. As part of his investigation into the

15

incident, the defendant spoke to a VFMA staff member and to the cadets whom the plaintiff interviewed.  Def.'s Mot. for Summ. J. at 9, ¶ 27; Pl.'s Resp. at 5, ¶ 27.  A VFMA staff member told the defendant that the Notice to all Visitors sign requiring visitors to register was posted on school grounds.  Def.'s Mot. for Summ. J. at 8, ¶ 24; Pl.'s Resp. at 4, ¶ 24.  The defendant did not specifically go to the entrance to see if it was posted, but he had seen the sign before the date of the incident.  *Id.*  The defendant was aware of the signage on the VFMA campus requiring individuals to check in with security to advise VFMA of their presence on the campus.  Def.'s Mot. for Summ. J. at 9-10, ¶ 28; Pl.'s Resp. at 5, ¶ 28.  The defendant believed that the signage establishes that one who does not register with security is not authorized to be on campus.  Def.'s Mot. for Summ. J. at 10, ¶ 29; Pl.'s Resp. at 5, ¶ 29.  He believed that the Notice to all Visitors #2 sign has the same effect as stating "no trespassing."  Def.'s Mot. for Summ. J. at 10, ¶ 32; Pl.'s Resp. at 6, ¶ 32.  He believed that the VFMA campus security has the right to grant or deny authorization for a visitor to enter campus because it is a private institution which has its own security force.  Def.'s Mot. for Summ. J. at 10, ¶ 31; Pl.'s Resp. at 6, ¶ 41.  The defendant also testified that, in his opinion, the location of the signs at the front of the campus were likely to come to one's attention, because a sign is posted at one of the main entrances to the campus.  Def.'s Mot. for Summ. J. at 10-11, ¶ 35; Pl.'s Resp. at 6, ¶ 41.  The defendant also testified that he had been on the campus of VFMA numerous times over the previous seven years.  Def.'s Mot. for Summ. J. at Ex. D11, Dep. of Jonathan T. Jagodinski at 7-8.

Examining the totality of the circumstances, the court finds that these facts establish that the defendant had probable cause to issue the citation.  The defendant received a credible report from school officials that an adult male was trespassing on private school property.  The "report alone sufficiently established probable cause, [and the defendant] was not required to undertake

an exhaustive investigation in order to validate the probable cause that, in his mind, already existed." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 790 n.8 (3d Cir. 2000).   The defendant did not, as the plaintiff suggests, need to call the plaintiff to determine if he entered VFMA property knowing he was not licensed or privileged to do so.  The defendant was aware that the perimeter of the school was enclosed by fencing, and of the existence of signs requiring that visitors register.  He believed that there was one such sign posted at one of the main entrances of the campus and that it was likely to come to one's attention.  The defendant was not required to conduct a search of the perimeter of the school to count the signs or confirm their exact location before issuing the citation.

Based on the information given to him by school officials and information that he had from visiting the campus numerous times over the previous seven years, it was reasonable for the defendant to believe that plaintiff entered VFMA despite knowing he was not licensed or privileged to do so, and to believe that notice against trespass was communicated by the signs stating that all visitors were required to register with campus security.  Even if the plaintiff did not have the requisite knowledge to commit defiant trespass, the totality of the circumstances justified a reasonable belief in the defendant's mind that the plaintiff had committed defiant trespass.  Because the court finds that the defendant had probable cause to cite the plaintiff for defiant trespass, the plaintiff is unable to prove an essential element of a malicious prosecution claim under Pennsylvania law, and the court will grant summary judgment in favor of the defendant on that claim.

### 2.      The Plaintiff's Motion for Summary Judgment

Turning next to the plaintiff's motion for summary judgment, because the court finds that the plaintiff has not presented evidence upon which a reasonable factfinder could find in his

favor on any of his claims against the defendant, the court will deny the plaintiff's motion for summary judgment.

### III.     CONCLUSION

After reviewing the evidence in the record and the parties' submissions, the court finds that there are no genuine issues of material fact that would preclude the entry of summary judgment in favor of the defendant in this case.  The plaintiff failed to meet his burden of demonstrating essential elements of each of his claims, namely that he suffered a constitutional violation, and that the defendant lacked probable cause to issue the citation for defiant trespass. Accordingly, the court will deny the plaintiff's motion for summary judgment and grant the defendants' motion for summary judgment.

An appropriate order follows.

BY THE COURT:


*/s/ Edward G. Smith*
EDWARD G. SMITH, J.

18